LOEB & HIRSCH, PLAINTIFFS IN ERROR, V. SAMUEL MILNER, DEFENDANT IN ERROR.

1. **Chattel Mortgage**: FORECLOSURE: REMOVAL OF PROPERTY TO ANOTHER COUNTY. Under the act of 1867, in foreclosing a chattel mortgage by a sale of the property, such sale is to take place in the county where the mortgage was first recorded, or in any county where the property may have been removed by consent of parties, and in which the mortgage was duly recorded. Under the act of 1879 the proper filing of a chattel mortgage takes the place of recording. But to authorize a sale under the statute where the property has been removed by consent of parties, into a county other than that where the mortgage was first filed, the mortgage must be duly filed in the county where the sale is to take place.

2. ——: SALE BY MORTGAGEE. A sale by the mortgagee under the statute in which he fails to comply with any essential requirement of such statute will render him liable to the mortgagor for the damages which the latter may thereby sustain.

3. ——: SALE IN ANOTHER COUNTY. A provision in the mortgage that the mortgaged property may be sold in a county other than that in which the mortgagor resides does not waive the statutory requirement that the mortgage is to be filed in the county where the sale is to take place.

4. ——: POSSESSION BY MORTGAGEE. A provision in a mortgage that the mortgagee may take possession of the property at any time he feels insecure, and advertise and sell the same, does not authorize him to apply the proceeds to the payment of a note not then due.

ERROR to the district court for Adams county. Tried below before MORRIS, J.

*Dilworth, Smith & Dilworth*, for plaintiffs in error.

*J. B. Cessna* and *Ragan, McDonald & Shellenbarger*, for defendant in error.

MAXWELL, CH. J.

In June, 1885, the defendant in error filed petition in the court below, stating that on the 2d day of May, 1882,

he became indebted to the plaintiffs in error in the sum of $280, and delivered to them two notes; one for $150, due November 10, 1882, and one for $130, due November 1st, 1883, each drawing interest at ten per cent. That to secure the payment of said notes he made a chattel mortgage on one brown horse mule, one bay horse mule, one black mare, one roan mare, one second hand Studebaker wagon, one set of harness, one white cow, one roan cow, one roan heifer, and one white heifer.

At the date of making said note and mortgage he resided in Webster county, Nebraska, and the property was in said Webster county, and he resided there, and said property remained there until the happening of the grievances hereafter mentioned. That the mortgage was filed in the county clerk's office of Webster county, and in no other county.

That on December 19th, 1882, he paid the plaintiffs in error, to be applied on the first note, $110, which left a balance due of $49.37 on the first note, and the second note of $130, due November 1st.

That on the 18th day of December, 1882, they without any justifiable cause took possession of the above property, of the value of $700, and carried the same away from said Webster county into Adams county, and wrongfully without his consent converted it to their own use. That they kept said property and the proceeds thereof to the value of $700 when he was only indebted to them in the sum of $180, and defendants are liable, to-wit, in the sum of $520, for which with costs he prays judgment.

The plaintiffs in error filed an answer to said petition, stating:

1st. That they deny each and every allegation therein contained.

2d. That on or about the 2d day of May, 1882, at the special instance and request of defendant in error, they sold and delivered to him one brown horse mule and one bay

horse mule of the value of $280, which were sold on credit and evidenced by two promissory notes dated May 2d, 1882, one for $150, due on or before November 10, 1882, and one for $130, due on or before November 1, 1883, drawing interest at ten per cent from date until paid, and to secure the payment of said notes he gave them a chattel mortgage upon the following described property, to-wit: one brown horse mule, one bay horse mule, one black mare, one roan mare, one second-hand Studebaker wagon, one set double harness, one white cow, one roan cow, one roan heifer, one white heifer. That said mortgage was filed in the county clerk's office of Webster county on the 3d day of May, 1882.

3d. That on the 2d day of May, 1882, the defendant in error became indebted to one G. H. Pratt in the sum of $39.45, which was evidenced by note of said defendant in error due on the 2d day of November, 1882, with interest at ten per cent, and to secure said note he gave a chattel mortgage to said Pratt on one red and white cow, one white cow, one yearling heifer, one white yearling heifer, and said mortgage was duly filed on the 3d day of May, 1882, in Webster county, and they allege that the said G. H. Pratt was about to foreclose said mortgage, and that for a valuable consideration they guaranteed and did assume to pay the said debt of G. H. Pratt.

4th. They further allege that the defendant in error paid to their agent the sum of $150, and that the said sum of money was applied in the payment of said Pratt debt and the expenses of collecting the same, and that the balance thereof was applied upon the payment of the notes held by them against the defendant in error.

5th. They further allege that default was made in the conditions of the mortgage given by the defendant in error to them, and that they felt unsafe and insecure, and that on or about the 20th of January, 1883, they took possession of the property mentioned in the mortgages, and after

having duly advertised the same for sale for at least twenty days they did on the 21st day of February sell said property or so much thereof as they got possession of for the sum of $329.25. That the debt, interest, costs, expenses of taking and feeding the said property amounted at that time to $318.04, excluding the payment of the Pratt note and all payment previously made by him, leaving in their hands the sum of $11.21, which sum they then and there tendered and offered to pay to said defendant in error, but he refused to receive the same. That they have always been ready and willing to pay him and are now ready to pay the same and hereby tender him and pay into this court for his use the said sum of $11.21.

They therefore plead not guilty to the charge in the petition and pray that they may recover their costs in this action.

To which answer there was attached as "Exhibits A and B" the two mortgages set forth in said answer. In Exhibit "A" the following condition was made:

"And I, the said S. L. Milner, do covenant and agree to and with the said Loeb & Hirsch that in case of default made in the payment of the above-mentioned promissory notes or any part thereof, or in case of my attempting to dispose of or remove from said county of Webster the aforesaid goods and chattels or any part thereof, or if at any time the said mortgagee, his heirs or assigns, should feel unsafe or insecure, then and in that case it shall be lawful for the said mortgagee or his assigns by himself or agent to take immediate possession of said goods and chattels wherever found, the possession of these presents being sufficient authority therefor, and to sell the same at public auction, or so much thereof as shall be sufficient to pay the amount due, as the case may be, with all reasonable costs pertaining to the keeping, advertising, and selling said property, together with the sum of $..... as liquidated damages for non-fulfillment of the contract. The money remaining

after paying said sums, if any, to be paid on demand and to the party of the first part. Said sale to take place in Hastings in the county of Adams and state of Nebraska after giving at least twenty days' notice of such sale by advertisement published in some newspaper printed in the county in which the sale is to take place, or in case no newspapers are printed therein by posting up notices in at least five public places in said county, two of which shall be in the precinct where the mortgaged property is to be offered for sale.

"Witness my hand and seal this 2d day of May, 1882.

S. L. MILNER."

A trial was had to a jury, with a verdict for defendant in error. At the trial the following proceedings were had:

John Milner, called and sworn on the part of the defendant in error, testified "That he was the son of the defendant in error. That he was acquainted with the property his father mortgaged to Loeb & Hirsch. That Thomas M. Abbott in December, 1883, took away a big mule, also a brown horse mule, one roan mare and a wagon, a double set of harness, one roan or spotted cow, one white heifer. He was acquainted with and raised with the stock. The brown mule was worth about $135 or $140. The bay horse mule was worth about the same. The wagon was worth about $30 or $40. The harness probably $10 or $15. The roan cow about $50. The white heifer about $15. His father was not there the day he took them."

Samuel Hirsch, one of the plaintiffs in error, testified as follows; "He remembered the mortgage S. L. Milner gave to Loeb & Hirsch. He never filed the mortgage in Adams county."

S. L. Milner, called in his own behalf, testified: "Identifies 'Exhibit A,' which was used in evidence without objection. Also identifies the mortgage that he gave to Pratt. Says he paid it to Jay Cherry. Jay Cherry had it in his possession. Identifies the receipt from Jay Cherry.

Copy of receipt attached marked 'Exhibit B.' $39.45 was to pay the mortgage marked 'Exhibit A.' Paid another sum of money to Loeb & Hirsch, to-wit: to Jay Cherry. Said he came to see about it, when I could pay it. . He gave me a receipt. That was to go on the note I owed Loeb & Hirsch. Identifies paper which is attached as 'Exhibit C.' That was to apply on the first note. Never paid any other money than that mentioned in the receipt. I wasn't at home when Abbott took the property. He didn't demand it of me. Was acquainted with the value of the property at that time. The brown horse mule was worth $150, the bay horse mule about $150, the black mare $125, the roan mare about the same, the wagon worth about $45, the harness worth about $15, the roan cow $50, the white heifer $25."

Mason Fisher, called on behalf of the defendant in error, testified that he was acquainted with the property mortgaged to Loeb & Hirsch by the defendant in error. The brown horse mule was worth about $150, the bay horse mule about $125, the black mare worth $85, the wagon worth $35, the roan mare $85, the harness worth $5, the roan cow worth $40, the white cow $25.

Joseph Acre, called by the defendant in error, testified that he was acquainted with the cows, horses, wagon, heifers, mules and harness that the defendant in error owned. The mares were worth at that time $165. He knew nothing more about it..

Exhibit B.

"Central Hotel, M. S. McClellan, Proprietor.

Blue Hill, Neb., Dec. 19, 1882.

$39.45.

Received of S. L. Milner thirty-nine and 45-100 dollars as the supposed amount of a note held by the First National Bank of Hastings, Neb., dated May 2d, 1882.

First National Bank,

(Signed.) By Jay Cherry."

And thereupon the plaintiffs in error filed a demurrer to the evidence as follows:

"Come now the defendants, plaintiffs herein, by their attorneys, and demur to the evidence of the defendant herein, and say that the same is not sufficient in law under the pleadings to constitute a cause of action against the defendants, plaintiffs herein, and in behalf of the plaintiff, defendant herein."

Does this testimony, taken as true, entitle the plaintiff below to recover? The statute relating to foreclosure of chattel mortgages, so far as it relates to the testimony in this case, is as follows:

Sec. 1 of chapter 12, Comp. Stat., provides that "Every mortgage of personal property, containing or giving to the mortgagee or any other person a power to sell the property described therein, upon default made in any condition of such mortgage, may be foreclosed in the cases and in the manner hereinafter specified."

Sec. 2, same chapter, provides that "To entitle any person to foreclose a chattel mortgage as hereinafter prescribed, it shall be requisite, 1. That some default in a condition of such mortgage shall have occurred, by which the power to sell became operative. 2. That if no suit or proceeding shall have been instituted at law to recover the debt then remaining, secured by such mortgage on any part thereof; or if any suit or proceeding has been instituted that the same has been discontinued, or that an execution upon judgment rendered thereon, has been returned unsatisfied, in whole or in part, and, 3. That such mortgage containing the power of sale has been duly recorded."

Section 3, same chapter: "Notice that such mortgage will be foreclosed by a sale of the mortgaged property, or some part thereof, shall be given as follows: By advertisement published in some newspaper printed in the county in which such sale is to take place, or in case no newspapers are printed therein, by posting up notices in at least

five public places in said county, two of which shall be in the precinct where the mortgaged property is to be offered for sale, and such notice shall be given at least twenty days prior to the day of sale."

Section 6, same chapter, provides that "Such sale shall be at public auction in the day time between the hours of 10 A.M., and 4 P.M, in the county where the mortgage was first recorded, or in any county where the property may have been removed by the consent of parties, and in which the mortgage was duly recorded, and in view of said prop-erty."

Section 8, same chapter, provides that "When a mortgage shall have been foreclosed, as herein provided, any and all right of equity of redemption, which the mortgagor may or might have had, shall be and become extinguished."

While the rule is well settled that a chattel mortgage transfers to the mortgagee the legal title to the things mortgaged, subject only to be defeated by the peformance of the condition; *Butler v. Miller*, 1 N. Y., 496; *Tallon v. Ellison & Sons*, 3 Neb., 74; *Brown v. Bement*, 8 Johns., 96; *Ackley v. Finch*, 7 Cow., 290; yet the mortgagor has an equity of redemption in the chattels and may redeem the same at any time before the sale. *Tompkins v. Beatie,* 11 Neb., 151. *Charter v. Stevens,* 3 Denio, 33. *Lansing v. Goelet,* 9 Cow., 372. *Hart v. Ten Eyck,* 2 Johns. Ch., 100. To extinguish this equity of redemption the statute provides the mode of foreclosing the mortgage and selling the property ; the sale is to take place " in the county where the mortgage was first recorded, or in any county where the property may have been removed by the consent of par-ties, and in which the mortgage *was duly recorded,* and in view of said property." The use of the words in section 6, " duly recorded," shows the intention of the legislature to require the filing of the mortgage in the county where the sale is to take place. This intention is clear and ex-plicit, the language being that the sales shall take place

in the county where the mortgage was first recorded, or in any county where the property may have been removed by consent of parties and in which the mortgage was duly recorded.

Since the act providing for foreclosure of mortgage was passed in 1867, the law relating to chattel mortgages has been changed by providing that "a mortgage or true copy thereof shall be filed in the office of the county clerk of the county in which the mortgagor executing the same resides, or in case he is a non-resident of the state, then in the office of the clerk of the county where the property mortgaged may be at the time of executing such mortgage." Sec. 14, chapter 32, Compiled Statutes.

The filing of a chattel mortgage in the proper county takes the place of recording the same and is sufficient. But the filing of a chattel mortgage in the county to which mortgaged property may be moved by consent, is a condition precedent to the right to sell the same in such county, and the sale made without complying with such condition is unauthorized. If the mortgagee may disregard the provisions of the statute in one essential requirement and not be liable to the mortgagor for the abuse of power, he could disregard all other provisions, and suit his own convenience and pleasure in the disposition of the property. The statute, while it protects the rights of the mortgagee and enables him to sell the property under certain conditions and thus divest all interest of the mortgagor, also protects the rights of the mortgagor and requires the mortgagee to conduct the sale in the manner prescribed. How far these statutory requirements may be waived by the parties is not now before the court, as there is no waiver in this case. The provision in the mortgage authorizing the sale to take place at Hastings does not waive the requirement that the mortgage be filed in Adams county. The rule is well settled that if a mortgagee in possession of the mortgaged goods sell them before he has complied with all the requirements

of the statute, he will be liable to the mortgagor for any damage he may sustain thereby.  6 Wait's Actions and Defenses, 196.  Jones' Chattel Mortgages, 730 § 774. *Simpson v. Carleton*, 1 Allen, 109.  *Botsford v. Murphy*, 11 N. W. R., 376, Mich.  *Denny v. Faulkner*, 22 Kas., 89; also 27 Kas., 437.  *Kopmeier v. O'Neil*, 3 N. W. R., 365 Wis. *Black v. Howell*, 56 Iowa, 630.  *Stromberg v. Lindberg*, 25 Minn., 513.  *Brink v. Freoff*, 40 Mich., 610.  Cooley's Const. L., 77–8.  *French v. Edwards*, 13 Wall., 80 U. S., 506.

It being in effect conceded that the plaintiffs in error failed to comply with the statute, the court would have been justified in directing the jury to find a verdict for the plaintiff below.  The instructions therefor need not be considered.  There is no complaint that the verdict is excessive or that the mode of assessing damages was incorrect.  Those questions, therefore, are not before the court.

It will be observed that the second note was not due until November, 1883.  This was the contract of the parties.  The right to take possession of the property at any time, reserved in the mortgage, did not authorize the mortgagee to apply the proceeds arising from the sale of same, to the payment of the note before it became due, even if the sale had been authorized.  Yet the defendants below, in plain violation of their duty to the mortgagor, sold the property, and without his consent applied the proceeds to the payment of a note that was not due for nearly a year afterwards; this they had no authority to do.  There is no material error in the record, and the judgment of the court below is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.