GRAND ISLAND BANKING COMPANY, APPELLANT, v. GEO. W. FREY ET AL., APPELLEES.

1. **Mortgage:** CHATTELS: NOTICE. A chattel mortgage duly filed in the county where the mortgagor resides is constructive notice of the existence of such mortgage, and will be constructive notice in any county to which the mortgagor may remove the property.

2. ———: FIXTURES. A party who obtains machinery on which there is a valid chattel mortgage cannot divest the lien by attaching such machinery as a fixture in a roller mill.

3. ———: EVIDENCE. Receipt of mortgagor in favor of a purchaser from him, *Held*, Under the evidence not to affect the rights of the mortgagee.

APPEAL from the district court of Custer county. Tried below before HAMER, J.

*O. A. Abbott*, for appellants, cited: *Cool v. Roche, Hall & Ray*, 20 Neb., 550. *Hait v. Remick*, 20 N. H., 285. *Whitney v. Heywood*, 6 Cush., 82. *Barrows v. Turner*, 50 Me., 127. *Hick v. Williams*, 17 Barb., 523. *Kanoga v. Taylor*, 7 Ohio State, 134. *Smith v. McLeon*, 24 Iowa, 322. *Bank of U. S. v. Doris*, 2 Hill, N. Y., 451. *Bank v. Cushman*, 121 Mass., 490. *Streeter v. Poor*, 4 Kan., 412. *Sencerbox v. McGrade*, 6 Minn., 334 and 484.

*Ledwich & Elliott* and *Hazlett & Bates*, for appellees, cited: Jones on Chattel Mortgages, Sec. 129.

MAXWELL, J.

This action was brought in the district court of Custer county, to foreclose a chattel mortgage on certain mill machinery, which constituted the motive power of the mill operated by the Broken Bow Roller Milling Company.

The facts as shown by the evidence are, in substance, as follows: John G. Schaupp and Son were, during the year 1885, the owners of and operating an extensive flouring mill at Grand Island, known as Planet Roller Mills; the plaintiff was their banker, to whom they then owed about $13,000. To secure this indebtedness and future advances they made a mortgage on the mill property for $10,000. Afterwards a doubt arose as to whether the machinery in the mill was covered by the real estate mortgage, and a chattel mortgage was taken to secure two notes of $5,000 each, being a part of the actual indebtedness. The real estate mortgage was recorded in Hall county, and the chattel mortgage filed therein according to law. About June 4, 1886, the mill was destroyed by fire, which damaged the engines and machinery. At the time of the fire the actual indebtedness of Schaupp & Son to the plaintiff was about $17,000. The real estate mortgage was foreclosed, property sold, and the proceeds credited on the indebted-

ness.   Sundry other payments, together with the money received from the insurance on the mill, were also applied to this debt, thus reducing it to a sum amounting at the time of the trial to about $4,000.   Soon after the fire the bank and Schaupp & Son were offered $2,000 for this burned machinery.   Mr. Schaupp, Sr., not thinking this a good offer, and the bank desiring to accept, something was said at the time to the effect that Schaupp could have all he could get out of it in excess of $2,000, or that the bank would release the mortgage for $2,000.   Mr. Frey, one of the defendants, was at this time engaged in the erection of a mill at Broken Bow, and he and Mr. Schaupp, Sr., entered into an agreement whereby Mr. Schaupp agreed to supply an engine and boiler to operate the mill, and put in some money.

Mr. Frey testifies that he knew this boiler and engine were to come from the ruins of Schaupp & Son's burned mill.   Soon after this Mr. Schaupp caused some of the mortgaged property to be shipped direct to Broken Bow, and some to be sent to Allis & Co., at Milwaukee, for repairs, and to be shipped after this to Broken Bow, where it arrived about Christmas, 1886, and was placed in position in the mill before the 29th of December, 1886, on which day a copy of plaintiff's mortgage was filed in the office of the county clerk of Custer county.   Mr. Frey paid the freight on the machinery to Broken Bow, and became liable personally for the repairs on the engine, and Mr. Schaupp failed to keep his engagements with him, and Frey assumed entire control.   Mr. Frey afterwards sold the mill and machinery to Mr. Collman.   The Broken Bow Roller Milling Company was then organized, with Mr. Inman, Frey, Collman, and Lorengan as its stockholders and officers.   The property was conveyed by Collman to the Broken Bow Milling Co., on or about March 29, 1887.   Mr. Frey and Mr. John G. Schaupp had a settlement, and Mr. Schaupp signed a release of all

*his* interest in the machinery in question to Mr. Frey for the sum of $50. The following is a copy of the receipt:

"BROKEN BOW, NEB., Apr. 15, 1887.

"Received of George W. Frey, Esq., fifty dollars, the receipt of which is hereby acknowledged, in full for all work done, material furnished of whatever description and character, and also in full for all claims John G. Schaupp may have or had against the said George W. Frey or against the mill property, both personal and real estate, located on lots 4 and 5, block 102 of railroad addition to Broken Bow, Nebraska. In witness whereof, said John G. Schaupp has hereby signed his name this 13th day of April, 1887.

"JOHN G. SCHAUPP.

"In presence of O. J. Collman."

Mr. Schaupp testifies that he only sold his own interest in the machinery, and that he never represented the bank; that its claim was not mentioned at the time.

Frey and the milling company defend against the action on the ground,

1st. That they are innocent purchasers, without notice of the bank's claim under the mortgage.

2d. That Schaupp had a right to sell the property and release the bank's claim, and that the receipt above set out has that effect.

3d. That the property has become affixed to the land, and is now real estate, and the plaintiff's claim is lost thereby.

The defendants have paid nothing for the machinery in question except the above sum of $50. Mr. Schaupp, Sr., in his testimony, estimates the value of the machinery in controversy at $1,400, while Mr. Frey places it at not to exceed $500. The claim of the plaintiff is shown to be *bona fide*, and Mr. Schaupp is actually indebted to it on the chattel mortgage in question for considerably more than the value of the mortgaged property in controversy.

The claim of the milling company that they had secured a release of the mortgage lien for the sum of $50 bears upon its face the stamp of want of good faith. The mortgage being duly filed in the office of the county clerk of Hall county, where the mortgagor resided at the time of execution of the mortgage, was constructive notice in that county and in whatever county Schaupp might remove the mortgaged property. *Cool v. Roche, Hall & Ray*, 20 Neb., 550. *Whitney v. Heywood*, 6 Cush., 82. *Barrows v. Turner*, 50 Me., 127. *Hick v. Williams*, 17 Barb., 523. *Kanoga v. Taylor*, 7 O. S., 134. *Smith v. McClean*, 24 Iowa, 322. The mortgage, therefore, was constructive notice to the defendants in Custer county, and this, too, without the filing of the copy in such county. In addition to the constructive notice it is evident that Mr. Frey, if not other members of the milling company, had actual notice of the existence of such mortgage before the payment of $50 to Schaupp. The filing of such copy, however, did not impair the plaintiff's right, nor can the attaching of the machinery as a fixture in the mill defeat the plaintiff's lien. The milling company, therefore, is liable to the plaintiff for the value of the machinery in question. This value, however, we are unable to determine from the proofs before us, and the cause must be remanded to take further testimony on that point, and for an appropriate judgment of the court below.

The judgment of the district court is reversed, and the cause remanded for the purposes herein indicated.

REVERSED AND REMANDED.

THE other judges concur.