M. P. MUSSER & COMPANY v. JOHN KING.

FILED JUNE 5, 1894. NO. 5452.

1. Chattel Mortgages: REPLEVIN: PRESUMPTION OF OWNERSHIP. In a replevin suit by the holder of a chattel mortgage to recover possession of the property described therein from a person other than such mortgagor, there is no presumption of law that the person who made such mortgage was at the time either the owner, or in possession, of the property mortgaged.

2. Replevin: PLEADING AND PROOF. In replevin, as in all other actions, the evidence should correspond to the allegations in the pleadings; and where a plaintiff in an action of replevin bases his right to the possession of the property claimed by reason of a special ownership therein or lien thereupon, he should set out in his petition the facts with reference to such special ownership or lien. Haggard v. Wallen, 6 Neb., 271, followed.

3. ———: EVIDENCE. The plaintiff alleged in his petition that he was the owner and entitled to the immediate possession of certain property, and that the defendant unlawfully detained the same. The defendant answered by a general denial. The plaintiff proved that a third party, prior to the date of the suit, was in debt to one T., and gave him a note therefor, and exe-

cuted a chattel mortgage on the property replevied to secure said note; that the plaintiff was the owner of said note and mortgage by assignment from T. Plaintiff then offered said note and mortgage in evidence. *Held*, That the evidence did not tend to prove the issue.

4. A chattel mortgage, whether in writing or not, is a pledge of personal property to secure the promise of the mortgigor or some one for whom he stands sponsor.

5. Chattel Mortgages: TITLE OF MORTGAGEE. The legal title to property pledged by a chattel mortgage remains in the mortgagor until divested by foreclosure proceedings and sale in pursuance of the statute; and until the title of the mortgagor is thus divested, the mortgagee has merely a lien upon the property.

6. ———: ———. The first point of the syllabus in *Adams v. Nebraska City Nat. Bank*, 4 Neb., 370, is overruled.

ERROR from the district court of Sheridan county. Tried below before BARTOW, J.

*Thomas L. Redlon*, for plaintiffs in error:

The mortgage of chattels vests in the mortgagee the legal title to the things mortgaged. (*Robinson v. Fitch*, 26 O St., 659; *Adams v. Nebraska City Nat. Bank*, 4 Neb., 370; *Marseilles Mfg. Co. v. Morgan*, 12 Neb., 69; *Nelson v. Garey*, 15 Neb., 535; *Tallon v. Ellison*, 3 Neb., 74; *Tompkins v. Batie*, 11 Neb., 151; Cobbey, Replevin, sec. 60, and cases cited.)

*C. H. Bane*, contra.

RAGAN, C.

M. P. Musser & Co. brought a suit in replevin in the district court of Sheridan county against John King, and alleged in their petition that they were the owners of and entitled to the immediate possession of certain chattels, and that John King unlawfully detained possession of said chattels from them. To this petition John King filed an answer, consisting of a general denial. King had a ver-

dict and judgment, and Musser & Co. bring the case here on error. On the trial of the case Musser & Co. proved that one William B. King, on the 16th of December, 1889, gave his note to one Nathan Tibbets, and to secure the same at the same time executed to Tibbets a chattel mortgage on the property involved in this suit; that said William B. King died insolvent on the 16th day of February, 1891, and that Tibbets had assigned the note and the mortgage securing the same to Musser & Co. After this proof was made Musser & Co. offered in evidence the note and chattel mortgage. John King objected to their introduction in evidence on the ground, among others, that no proper foundation was laid for their admission in evidence, and that they did not tend to prove the issue made by the pleadings. The district court sustained the objection and excluded the note and chattel mortgage, to which ruling Musser & Co. took an exception. No other or further evidence was offered on the trial of the case. The only error assigned here is the ruling of the district court in excluding from the jury this note and mortgage. The issue in the case was the right of Musser & Co. to the immediate possession of the property replevied, and by their petition they predicated their right to the possession of the property on their ownership of the same.

In replevin, as in all other actions, the evidence should correspond to the allegations in the pleadings. If Musser & Co. based their right, as is probable, to the possession of this property on their ownership of the note and chattel mortgage, they should have so stated in their petition. In other words, they should have pleaded the facts. If they claimed to be the actual owners of the property, an allegation that they were the owners of it was sufficient. If they claimed a special ownership in, or lien upon, the property, and predicated their right to the possession of the property on such special ownership or lien, the petition should have stated the facts in reference thereto. (*Haggard*

*v. Wallen,* 6 Neb., 271.)   The note and mortgage offered did not tend to prove that Musser & Co. were either the owners of or entitled to the possession of the property. There was no evidence offered showing that William B. King was either the owner or in possession of this property at the time he mortgaged it to Tibbets.   The law, in the absence of all evidence on the subject, will not indulge the presumption that one who made a mortgage upon chattels was either the owner of or in possession of such property at the time he made such mortgage when the holder of such mortgage seeks to recover possession by replevin of such property from a third party. (*Everett v. Brown,* 64 Ia., 420; *Warner v. Wilson,* 73 Ia., 719; *Gibbs v. Childs,* 143 Mass., 103.)

The petition in this case was doubtless framed upon the theory that the mortgagee of chattels is the owner of the legal title thereto, and in *Adams v. Nebraska City Nat. Bank,* 4 Neb., 370, it was so decided.   An examination of that case, however, shows that the point was not necessary to a decision of the case.   The action was brought by a mortgagee of chattels in possession thereof to restrain a sheriff from levying upon and selling said chattels under an execution against such mortgagee, and the court held that the petition did not state such a case as authorized the interference of a court of equity to restrain the sale.   There can be no question but that the conclusion reached was a correct one; but the other point stated in the first paragraph of the syllabus of the case, viz., " A mortgage of chattels transfers to the mortgagee the whole legal title to the thing mortgaged," was not involved in the case. This case, if not expressly, has in effect been many times overruled by the decisions of this court; and we think it is the almost universal understanding of both the bench and the bar of the state that the mortgagee of chattels acquires only a lien upon the mortgaged property, and not the legal title thereto, by virtue of such mortgage.   That

the interest of a mortgagee in chattels is that of a mere lien has been frequently recognized by this court.

In *Tompkins v. Batie*, 11 Neb., 147, it was held: "A mere tender of the amount secured by a chattel mortgage to the creditor on the day fixed for payment, although not accepted nor kept good, has the effect to release the property from the lien of the mortgage." This case was reaffirmed in *Knox v. Williams*, 24 Neb., 630.

In *Gillilan v. Kendall*, 26 Neb., 82, the court said: "The mortgagor of chattels, until foreclosure, possesses a beneficial interest in the property mortgaged, and will convey a good title by a sale of such property to one who purchases in the open market in good faith and without notice, actual or constructive, of the mortgage."

A chattel mortgage has also been recognized by this court as a mere lien upon the property mortgaged in the following cases: *Marseilles Mfg. Co. v. Morgan*, 12 Neb., 66; *Grand Island Banking Co. v. Frey*, 25 Neb., 66; *Gandy v. Dewey*, 28 Neb., 175.

In *Grimes v. Farrington*, 19 Neb., 44, the court held that the mortgagor of personal property, upon which an attachment issued against him had been levied, had the right, under the provisions of section 235 of the Civil Code, to resist the attachment by a motion to discharge the same.

In *Hamilton v. Lau*, 24 Neb., 64, the court said: "In every mortgage there is a trust created in a certain sense in favor of the mortgagor in respect to the residue or surplus after the application of sufficient of the fund to satisfy the claim of the mortgagee."

In *Jordan v. Hamilton County Bank*, 11 Neb., 499, it was held: "Where a senior mortgagee of chattels, for the purpose of depriving of his security a junior mortgagee of a part of the same property, fraudulently releases that portion on which his mortgage is the exclusive lien, the same being adequate security, he will not be permitted, to the prejudice of the latter, to go upon the property covered by the second mortgage for payment of his demand."

In *Newlean v. Olson*, 22 Neb., 717, the mortgage in controversy contained this clause: "If the mortgagee shall at any time feel unsafe or insecure, he may seize and sell as aforesaid the property." The court held that the words "feel unsafe and insecure" did not authorize the mortgagee to exercise an arbitrary discretion in taking possession of the mortgaged property, but that before he could take possession thereof the mortgagor must have done or been about to do some act tending to impair the mortgagee's security.

In *Harman v. Barhydt*, 20 Neb., 625, the court said that the transfer of one of several notes secured by a chattel mortgage was an assignment *pro tanto* of the mortgage to the person to whom such note was assigned.

Chapter 12, Compiled Statutes, 1893, prescribes one method by which chattel mortgages may be foreclosed. By section 6 of that chapter it is provided that the sale shall be in the day-time, in the county where the mortgage was first filed, or in any county where the property may have been removed by consent of parties and in which the mortgage has been duly filed. This court construed this statute in *Loeb v. Millner*, 21 Neb., 392. In that case Millner resided in Webster county and made a mortgage of some chattels to Loeb, who resided in Adams county. The mortgage was filed in Webster county, but was never filed in Adams county. Loeb took possession of the chattel property, brought it into Adams county, and advertised and sold it in pursuance of the statute just quoted. Millner then sued Loeb to recover the value of the property pledged to secure the debt, and the court held, in effect, that the advertising and sale of the property by Loeb in Adams county was a conversion by him of the property, and that he was liable to Millner for its value less the debt which Millner was owing him and which the property was pledged to secure.

These cases show that the doctrine of this court is that

61

the only interest which a mortgagee of chattel property has therein by virtue of such mortgage is that of a lien-holder. A chattel mortgage then, whether in writing or not, is a pledge of personal property to secure the performance of the promise of the mortgagor or someone for whom he stands sponsor. It need not be in writing. (*Conchman v. Wright*, 8 Neb., 1; *Ostertag v. Galbraith*, 23 Neb., 730; *Sloan v. Coburn*, 26 Neb., 607.) A bill of sale, absolute on its face, may be shown to be a chattel mortgage. (*Omaha Book Co v. Sutherland*, 10 Neb., 334.)

The question is, what was the intention of the parties pledging the property? If it was intended to be a security, then it is a chattel mortgage, no matter how, or in what form, the pledge may be expressed; and the legal title to property pledged by a chattel mortgage remains in the mortgagor until divested by foreclosure proceedings and sale in pursuance of the statute; and until the legal title of the mortgagor is thus divested, the mortgagee has merely a lien upon the mortgaged property. If the mortgagee of chattel property is the owner of the legal title thereto, it would seem that such property should be listed for taxes against him; and yet we do not think that any such a contention can be maintained. Would an indictment for larceny which alleged the property to be in A be sustained by proof that A's title was that of a mortgagee? By section 8, chapter 12, Compiled Statutes, 1893, it is provided that when a mortgage shall have been foreclosed as provided in the said chapter, all right of equity of redemption which the mortgagor had in such property should be and become extinguished. This is a recognition by the legislature of the mortgagor's title to personal property until the same had been divested by foreclosure proceedings. Section 9 of the same chapter makes the sale, transfer, and disposal of personal property by a mortgagor during the existence of the lien created by such mortgage a felony without first obtaining consent in writing of the

owner and holder of the debt secured by such mortgage; and section 10 of said chapter denounces as a felony a removal of the mortgaged property out of the county in which it was situate at the time it was mortgaged and during the existence of the lien created thereby. Here, again, is another legislative recognition that the legal title to mortgaged chattels remains in the mortgagor thereof until divested by foreclosure proceedings.

The first point of the syllabus in *Adams v. Nebraska City Nat. Bank,* 4 Neb., 370, must be overruled. This doctrine, that the mortgagee of chattels is the owner of the legal title thereto, is a judicial myth,—a legal fiction. Its origin is somewhat shrouded in obscurity. It probably came to England with the conquering Normans; and certain it is that it was nurtured and grew to maturity under the fostering care of the common law courts of that country. These courts professed themselves unable to give any construction to a contract except that warranted by the very letter thereof; and it was the equity courts of that country, who, by applying to contracts the doctrine of a great teacher, that "the letter killeth, but the spirit giveth life," extended to the mortgagor or pledgor of chattels the right to redeem the same by his performing the promise which the pledge was given to secure; and these courts exercised this power upon the theory—as good now as it was then—that the doctrine of forfeiture was abhorrent to the conscience of a chancellor. There are many and respectable authorities which hold to the doctrine that the mortgagee of a chattel is the owner thereof; but these cases, no matter where found, nor by whom written, have for their precedent the common-law English courts. This doctrine, whether it originated in the necessities of Venetian commerce, or had its origin in the feudal system of the Normans, is an alien to our institutions and a stranger to our jurisprudence, where the courts apply both legal and equitable remedies in the administration of justice, and

where the law requires that contracts shall be construed according to the intention of the parties thereto. It is the construction of Shylock, demanding the pound of flesh, no more nor less, because so nominated in the bond. The judgment of the district court is

AFFIRMED.