**WALKER et al. v. SECURITY LOAN INV. CO. et al.**

No. 6623.

Court of Civil Appeals of Texas. Texarkana.

June 4, 1953.

Rehearing Denied June 25, 1953.

Power, McDonald & Mell and Hardy & Clapp, Tyler, for appellants.

Ramey, Calhoun, Marsh & Brelsford and William R. Niblack, Tyler, for appellees.

LINCOLN, Justice.

This appeal is from a judgment for damages for conversion of an automobile in favor of plaintiff Security Loan Investment Company, against defendants Lewis Walker, C. M. Bartlett, James L. Pollard and Bill Shaw and others. Walker and Bartlett were found by the jury to have been partners in business, and Pollard and Shaw were found to be partners. We assume as correct the statement in appellants' brief, uncontroverted, that all issues and controversies involving the defendants James E. Donnahoe and Eastex Finance Co., Inc., have been settled and their case is not before us. Out of a rather complex fact situation a determination of the issues between the plaintiff, which we will refer to as the Loan Company, and the defendants, appellants here, Walker and Bartlett, which we will refer to by name, will resolve all matters in controversy.

Appellants Walker and Bartlett were doing business in the City of Tyler as Tyler Used Car Company, engaged in selling new and used cars. Appellants Pollard and Shaw were engaged in like business but with no official connection with Walker and Bartlett. The title of the Chevrolet automobile involved in the case is best disclosed by its history. It was sold as a new car from the manufacturers to Courtright Chevrolet Company at Sumpter, South Carolina; Courtright Chevrolet Company sold to H. R. Lawrence of Sumpter, S. C., January 29, 1949, giving to him an invoice therefor. Lawrence delivered the car over to Rawls Auto Auction Sales, Inc., at Leesville, S. C., and it was there sold on January 31, 1949, to Hyler's Service Shop, of Saluda, S. C., and an instrument in writing evidencing such sale was passed between them.

In the foregoing transactions no liens were taken or given. Hyler's Service Shop was also known as Hyler Motors, and Hyler Motor Company. It was owned and operated by Otis Hyler, and reference to him by name will include the assumed names under which he operated. His business was buying and selling new and used cars.

The loan company's suit is based upon a note and mortgage on the car in question, alleged to have been executed and delivered by one Gladys Hyler in favor of Hyler's Service Shop on February 10, 1949, for $1,937.16, payable in monthly installments and providing for interest and reasonable attorney's fees. The security is what is referred to as "Purchase Money Chattel Mortgage." It bears even date with the note. The note was endorsed by Hyler's Service Shop with recourse to the order of the Loan Company, and the alleged mortgage was transferred and assigned to said Loan Company, all on the same date as the mortgage and note were given. Likewise, on the same date the mortgage was duly filed for record and recorded in the proper records of Saluda County, South Carolina, under registration laws similar to registration laws of chattel mortgages in Texas other than motor vehicles since passage of our certificate of title law.

On March 14, 1949, Otis Hyler placed this same automobile with Rawls Auto Auction Sales, Inc., at Leesville, S.C., for sale. Appellant Walker had gone to Leesville to buy some used automobiles for the business of himself and Bartlett at Tyler and to be resold. He had patronized Rawls Auto Sales before. On the date last named he purchased the Chevrolet automobile in controversy, and received a "Conditions of Purchase" instrument, apparently operating or considered as a bill of sale from Hyler's Service Shop, in which Tyler Used Car Company was named buyer and Hyler's Service Shop as seller, paying therefor $2,050 by check drawn on the account of Bartlett at Tyler, Texas. The car was removed to Atlanta, Georgia, where it was registered and license plates were bought. It was then removed to Tyler and thereafter sold by Tyler Used Car Company to Pollard and Shaw and by Pollard and Shaw it was sold to Donnahoe, who was in possession at the time of suit. In the meantime the cash market value of the car had declined, and the plaintiff, the loan company, exercised its option to sue for conversion, and judgment was rendered in its favor for

the balance due on its debt, $1,614.36, together with $226 additional as interest and $250 as attorney's fees. The judgment was against all defendants, jointly and severally, and various provisions were included adjusting rights among the several defendants, not necessary to detail here. Donnahoe held the certificate of title with a lien on the automobile in favor of Pollard. Neither South Carolina nor Georgia have what is commonly referred to as Certificate of Title Acts, and in each of them title to a motor vehicle passes by written or verbal sale and delivery. Appellants assert that the issues here involved are that Walker and Bartlett acquired title under a chain emanating from the manufacturers down to them; that Gladys Hyler is a stranger to the title; that the instrument alleged to be a mortgage and its recordation were not constructive notice to Walker when he bought the car at Leesville, S. C., and that he did not have, and that there is no proof that he did have, actual notice of such mortgage.

■ In our opinion these contentions of the appellants appear to be supported by ample authority, and specifically as ruled by Rhea Mortgage Co. v. Lemmerman, Tex. Com.App., 10 S.W.2d 690, 691, and Southwest Security Co. v. Jacques, Tex.Com. App., 42 S.W.2d 232. In the Rhea case the Commission of Appeals said: "We think the overwhelming weight of authority establishes the rule that a mortgage on personal property made by one who is not the owner thereof, although placed of record, is not constructive notice to any one dealing with the owner of the property." That rule is supported by a long line of decisions, including Texas cases. The facts in the Rhea case, as in most of the others cited, may differ from the facts here; but it is a rare experience to find a case on "all-fours" with the one on review. Nevertheless, the rule laid down is the statement of a broad principle which is applicable to the present case.

The facts in Southwest Security Co. v. Jacques, supra [42 S.W.2d 233], are quite similar to the facts here. The mortgage sued on was made to the owner of the automobile. He transferred and assigned the

note and mortgage to the plaintiff. It was registered in the proper county. The mortgagee later sold the car to Pratt. The Commission of Appeals said: "The trial court concluded from the above and foregoing facts that, when W. C. Pratt purchased said automobile from J. W. Newsom, he took the same free from the mortgage held by Southwest Security Company. He also concluded, as a matter of law, that the mortgage introduced by plaintiff Southwest Security Company is insufficient to show ownership of said automobile in Joe Jacques, and that plaintiff is not entitled to a foreclosure of its mortgage, and that W. C. Pratt and Howard Graham are innocent purchasers for value without notice of plaintiff's mortgage."

The Commission then said: "We think disposition of this case is ruled by the doctrine of Rhea Mortgage Co. v. Lemmerman (Tex.Com.App.) 10 S.W.2d 690 * * *."

■ The rule seems to us to be sound in principle and reason. Only the owner of personal property or some one by him authorized may execute and deliver an enforceable chattel mortgage as against the rights of a third person who has acquired the property in good faith and without notice. Otherwise, a stranger to the title could impair and even destroy the rights of an innocent purchaser in possession. This result is well stated by Justice Field in Gibbs v. Childs, 143 Mass. 103, 9 N.E. 3, 5: "If the execution, delivery, and recording of a mortgage were held to create a prima facie title to personal property against a person in possession, then a prima facie right to the property of another could be created by any one at will."

■ The sale to Walker having been made by the alleged mortgagee, Otis Hyler, and not by the mortgagor, Gladys Hyler, the question for decision by the trial was whether Walker or his vendees had actual notice of the mortgage. We do not see how proof of ownership and possession by Gladys Hyler, absent such actual knowledge, could affect the rights of appellants. But if such proof were admissible, the burden would be on the Loan Company. Execution and delivery of the chattel mortgage is not of itself sufficient evidence of

the mortgagor's ownership of the property as against Walker and those holding under him. Rhea Mortgage Co. v. Lemmerman, supra; Southwest Security Co. v. Jacques, supra. "The law, in the absence of all evidence on the subject, will not indulge the presumption that one who made a mortgage upon chattels was either the owner of, or in possession of, such property, at the time he made such mortgage, when the holder of such mortgage seeks to recover possession by replevin of such property from a third party." Musser v. King, 40 Neb. 892, 59 N.W. 744, 745, 42 Am.St.Rep. 700.

There is no evidence that a sale of the automobile was made by Otis Hyler to Gladys Hyler, except as shown by the mortgage itself; no evidence of her possession; no evidence of any payments made by her on the mortgage note, although credits had been given on the note by the Loan Company. We find the car exposed for sale by the alleged mortgagee, and a sale completed by him to Walker.

**■** The judgment entered was for damages for conversion and not for debt and foreclosure of the mortgage. We do not think that takes the case out of the rule stated, since the count for conversion is predicated upon the claimed enforceability of the mortgage. 42 Tex.Jur. p. 533, Sec. 23. "A third person without notice who takes possession before the mortgage is recorded is not liable for conversion to the mortgagee", 14 C.J.S., Chattel Mortgages, § 216, page 823, nor to his assignee. Under the holdings of the authorities cited, the recorded mortgage did not give notice to Walker, and he and those holding under him without notice are entitled to be protected to the same extent as if the mortgage had not been recorded.

We do not think the decisions in Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W.2d 843, and Clanton v. Thigpen, Tex.Civ. App., 226 S.W.2d 850, rule this case. In each of those cases the mortgagor owned the motor vehicle and was in possession of it, and he surreptitiously removed it to Texas and sold it under false and fraudulent statements. Here the vehicle was in possession of and sold by the mortgagee.

Nor do we think that, under any subdivision of Rule 93, T.R.C.P., the appellants were required to file verified pleas. Appellants' answers disclosed their defenses. The question here is want of proof to sustain the plaintiff's claim for conversion, which constituted its cause of action.

**■** Appellee finally urges that since the mortgage contains assertions, declarations and admissions of Otis Hyler, and were admissible and binding as against him, they are also admissible and binding on all persons holding title under him. But the predicate relied upon is not applicable here. Otis Hyler was not a party to the suit, and was not a witness. His admissions, declarations and assertions must be found only in the instrument itself, and the authorities cited hold that the mortgage alone is not sufficient to show ownership and possession in Gladys Hyler. Parenthetically, we might remark that the record does not disclose the relationship, if any, between Otis Hyler and Gladys Hyler.

We are therefore of the opinion that the learned trial court fell into error in rendering judgment in favor of the Loan Company as against Walker and Bartlett, jointly and severally, or as a partnership, and in rendering a like judgment against Pollard and Shaw. The court seems to have concluded that the mortgage itself was sufficient to establish the right of the appellee to a foreclosure or to a judgment for conversion. It is, therefore, a question of insufficient evidence rather than of no evidence, and under the authority of Childre v. Casstevens, 148 Tex. 297, 224 S.W.2d 461, and authorities there cited, it is our duty to reverse the judgment and to remand the cause.

Judgment reversed and remanded.