SUDDATH, *Appellant*, v. GALLAGHER *et al.*

### Division Two, January 9, 1895.

1. **Insolvent Corporation:** ASSETS. Where a corporation becomes insolvent its assets are a trust fund to be preserved by its officers for the benefit of its creditors.

2. ———: ———: DIRECTORS. The directors can not, in equity, after such insolvency, use such assets for their own advantage.

3. **Corporation:** CREDITORS: INSURANCE. The officers of a corporation may, with the consent of the insurer indorsed thereon, place a policy of insurance on its property for the benefit of its creditors.

4. ———: EMPLOYEES: SUBROGATION. Where the president of a corporation voluntarily pays its employees with his own money, in the absence of agreement to that effect, he is not subrogated to their rights of a prior lien under Revised Statutes, 1889, section 2538, in case of its insolvency.

5. **Equity:** SUBROGATION. It is only in cases where a person advancing money to pay the debts of a third person occupies the position of surety or is compelled to pay it to protect his own rights that a court of equity will subrogate him to the rights of the creditor as a matter of course without any agreement to that effect.

### *Appeal from Bates Circuit Court.*

REVERSED AND REMANDED.

*A. B. Logan* and *R. T. Railey* for appellant.

(1) The court erred in holding that the surplus of insurance was not corporate property. Respondent Garrison, being an officer and director of the corporation, could not deal with the trust property to his individual benefit. *Bent v. Priest*, 10 Mo. App. 543; s. c., 86 Mo. 475; *Foster v. Mill Co.*, 92 Mo. 79; *Roan v. Winn*, 93 Mo. 503; *Ward v. Davidson*, 89 Mo. 445; *Packet Co. v. Davidson*, 95 Mo. 467; *Bennett v. Company*, 19 Mo. App. 349. (2) The decree finds that the corporation was dissolved, not simply that it had ceased to be a going concern. It does not state the existence of certain facts, and then draw the conclusion from those facts that it was dissolved, but it is stated with all the force and effect of the term, that it was dissolved and insolvent, and whatever facts are necessary to constitute dissolution and insolvency are conclusively proven to have existed. *Block v. Estes*, 92 Mo. 318; *Greely v. Bank*, 103 Mo. 212; *Thompson v. Greely*, 107 Mo. 577. The corporation, being dissolved at the time of the appropriation of the Garrison and Gallagher note, the surplus of the insurance only was a trust fund, ought to have been distributed *pro rata* among the creditors of the corporation. R. S. 1889, sec. 2513. *Co. v. Bank*, 122 Mo. 154; *Alberger v. Bank*, 123 Mo. 313. (3) The corporation is shown by the decree to have been insolvent and dissolved at the time the surplus of the insurance money was applied to the payment of the Garrison and Gallagher note, and, Garrison and Gallagher being directors and officers, a preference could not be made in their favor, and this applies as well to a case of contingent liability such as indorsers or guarantees. *Williams v. Jones*, 23 Mo. App. 132; *Mill Co. v. Kampe*, 38 Mo. App. 229;

*Corey v. Wadsworth*, 11 S. Rep. 350; *Richards v. Ins. Co.*, 43 N. H. 263; *Haywood v. Lumber Co.*, 64 Wis. 639; *Sweeny v. Grape Sugar Co.*, 30 W. Va. 443; *Gibson v. Trowbridge Fur. Co.*, 96 Ala. 357; *Drury & Page v. Railroad*, 7 Wall. 299; *Ogden v. Murray*, 39 N. Y. 202; *Hoyle v. Railroad*, 54 N. Y. 314; *Beach v. Miller*, 130 Ill. 162; *Roseboom v. Whittaker*, 132 Ill. 81; *Co. v. Tool Co.*, 44 Fed. Rep. 231; *Line Co. v. Varnish Co.*, 45 Fed. Rep. 7; *Port v. Russell*, 36 Ind. 60; *Jackson v. Ludding*, 21 Wall. 616; *Olney v. Land Co.*, 16 R. I. 595. (4) Garrison, as president of the corporation, had no authority to appropriate assets to the payment of this demand, and this is especially true in a case like this, where he is by the act preferring himself as a creditor of the insolvent corporation, and this would be equally true if all the three directors had consented, or agreed to the preference, as Garrison and Gallagher, a majority of the directors, were interested in the preference. *Mills Co. v. Kampe*, 38 Mo. App. 229; *Ward v. Davidson*, 89 Mo. 445; *Foster v. Planing Mill Co.*, 92 Mo. 79; *Bennett v. Co.*, 19 Mo. App. 349; *Hyde v. Larkin*, 35 Mo. App. 365; *Haywood v. Lumber Co.*, 64 Wis. 639; *Belcher v. Sugar Refining Company*, 118 Mo. 264; *Rubber Co. v. Geo. D. Scott Co.*, 96 Ala. 439; *Roseboom v. Whittaker*, 132 Ill. 81; *Hill v. Coal Mining Co.*, 24 S. W. Rep. 223.

*Robert M. Foster* for respondent.

(1) The policies were indorsed, "loss, if any, payable to F. E. Fowler, trustee, as his interest may appear." No part of the proceeds of the policies ever became the property or money of the corporation and neither the corporation nor the receiver ever became entitled to any part of it, as the payee's interest, as it is shown, absorbed the whole of it and left something

still unpaid. *Griswold v. Ins. Co.*, 1 Mo. App. 100; s. c., 70 Mo. 658; *Bidwell v. Dock Co.*, 40 Mo. 46; *Kemp v. Ins. Co.*, 41 Mo. App. 30; *Franklin v. Ins. Co.*, 43 Mo. 495; *Holland v. Smith*, 6 Esp. 11; *Kabrick v. Ins. Co.*, 48 Mo. App. —. (2) Even if the corporation was confessedly insolvent at the time the insurance was effected and the payments made, there was no preference in fraud of creditors, or undue use of their trust position. (3) The presidents of corporations by general custom exercise certain powers in acting for the corporation; and being the legal head of the body, when an act is performed by him (it being objected he had no authority to assign), the presumption will be indulged in that the act is legally done and binding upon the body in the absence of proof that under the charter and by-laws of the corporation he had no such authority. *Glover v. Lee*, 140 Ill. 107; *Smith v. Smith*, 62 Ill. 493; *Southgate v. Railroad*, 61 Mo. 94; *Brambrick v. Campbell*, 37 Mo. App. 463. (4) On payment of the labor claims to the amount of $2,600 without express contract, Garrison became subrogated to the rights of those whose claims were satisfied. *Bush v. Wodsworth*, 60 Mich. 266; *Hoover v. Epler*, 52 Pa. St. 523; 1 Jones on Liens, 993. (5) Among the rights of the labor claimants was that to preferred payment, in case of the insolvency of the corporation. Sec. 2538, R. S. Mo. 1889; *Foster v. Planing Mill Co.*, 92 Mo. 89. (6) The interest assigned by the indorsement on the policy was not in the property insured, but only in the contract of insurance. *Franklin v. Ins. Co.*, 43 Mo. 495; *Parks v. Ins. Co.*, 26 Mo. App. 524. (7) But if the corporation was not confessedly insolvent, though embarrassed, the directors could with other creditors rightfully secure themselves on its property. *First.* It is well settled in this state that a corporation like an individual,

though insolvent, may prefer some creditors to others, even though such creditors be directors. *Foster v. Planing Mill Co.*, 92 Mo. 87; *City v. Alexander*, 23 Mo. 524; *Ketchum v. Railroad*, 69 Mo. 224; *Oil Co. v. Marlbery*, 1 Otto, 587. *Second.* And a director may, in good faith, loan the corporation his money for its legitimate purposes and hold a valid claim against the corporation, but only while the corporation is a "going concern" and before it passes into the hands of a receiver, or liens attached to its property. *Co. v. Bank,* 122 Mo. 154; *Foster v. Co.*, 118 Mo. 264.

BURGESS, J.—This is an action by plaintiff as receiver of the Montserrat Mining and Manufacturing Company, against defendants, to recover the sum of $3,000, alleged to be the property and money of said company, collected and taken charge of by the defendants as directors of said corporation, after the same became insolvent and dissolved. Plaintiff has made a full and fair statement of the salient facts in the case, which we adopt. It is as follows:

"On the ninth day of August, 1886, The Montserrat Terra Cotta Company was incorporated as a manufacturing and business corporation under the laws of the state of Missouri, and during its existence contracted a large amount of debts to divers parties, and particularly to the Farmers' Bank of Frankfort, Indiana. On the twelfth day of January, 1887, said Terra Cotta Company, by authority of its board of directors, executed and delivered a certain mortgage or deed of trust to F. E. Fowler, trustee, covering the property of said Terra Cotta Company to secure the payment of a certain note for $12,500 in said deed described, which said deed of trust contained the usual covenants as to insurance, taxes, etc., and said property was insured for the benefit of the holders of said

note, indorsed thereon 'Loss, if any, payable to F. E. Fowler, trustee, as his interest may appear.'

"On the thirteenth day of April, 1888, and for a long time prior thereto, the said Montserrat Terra Cotta Company became and was totally dissolved, insolvent, and unable longer to do business. On the thirteenth day of April, 1888, the Montserrat Mining and Manufacturing Company was duly incorporated as a manufacturing and business corporation under the laws of the state of Missouri and continued to exist as such until about the twenty-ninth day of June, 1889. O. L. Garrison, John A. Gallagher and John H. Siegrist were the first board of directors, Garrison being the president, Gallagher the vice-president and business manager, and, as no successors were elected, they continued to be such during all the time covered by the controversy in this case. The Montserrat Mining and Manufacturing Company became the successor of the Terra Cotta Company, and continued to transact the same business theretofore carried on by the Terra Cotta Company, and at the same place, and all the property, real and personal, owned and acquired by the Terra Cotta Company up to the time of its dissolution, was transferred to the Mining and Manufacturing Company, and it assumed the balance of $11,000, due on said $12,500 note. The Montserrat Mining and Manufacturing Company continued in business until about the twenty-ninth day of June, 1889, when it became insolvent, unable longer to do business, and was also dissolved.

"Just prior to, or about the time of the dissolution of the said Mining and Manufacturing Company, it was indebted for labor to the amount of $2,600, there being some sixty days' labor due the men, and the defendant, Garrison, gave his check to the secretary of the company for the amount, taking the note of the company, payable to Gallagher and himself for $2,600,

which note was indorsed by both of them, taken to St. Louis and discounted, defendant Garrison having advanced the money before he received any proceeds of the discount at the bank. This note, by renewal, was afterward increased to $2,700, and is the $2,700 note hereinafter mentioned as being paid out of the proceeds of insurance.

"On the ———— day of October, 1889, the insurance previously taken out having expired, and said Montserrat Mining and Manufacturing Company being without the funds with which to renew said insurance, the defendant, O. L. Garrison, for the purpose of protecting his indorsements, as aforesaid, guaranteed the premium of $400 on the said $1,600 of insurance taken out in the name of the Montserrat Mining and Manufacturing Company, and had the loss made payable to F. E. Fowler, trustee, by indorsements on the policies to secure payment of the balance of $11,000 on the real estate note of $12,500. Mr. Garrison stated to Mr. Fowler, who also was an insurance agent, and with whom the insurance was placed, at the time of renewing the policies, that he wanted to renew for the purpose of protecting the two notes that he was indorser of.

"On the twenty-ninth day of November, 1889, the property covered by this insurance was destroyed by fire, and on the ———— day of January, 1890, the lost was adjusted, amounting to $14,732.12. About the fifteenth to the eighteenth of March, 1890, the insurance money was paid to Fowler, who indorsed the drafts and delivered them to Garrison, who applied the sum of $11,557.30 to the discharge of the balance due on the real estate note of $12,500, paid the sum then due on the $2,600 note of $2,764.84, paid the costs of adjusting, having to pay $25.18 out of his own pocket.

"Once every month, while the Montserrat Mining and Manufacturing Company were doing business, the

secretary of said company rendered a statement of the financial and business standing of the company, which statement was rendered to its president, Garrison, for the information of the board of directors.   Mr. Garrison saw each of these statements.

"On the nineteenth day of September, 1890, the Farmers' Bank of Frankfort, Indiana, and other creditors of the Terra Cotta Company and the Mining and Manufacturing Company, filed their bill in the circuit court for Johnson county, Missouri, the general object and nature of which was to have the Terra Cotta Company and the Montserrat Mining and Manufacturing Company adjudged to be insolvent and dissolved, and and that a receiver be appointed to take charge of the books and assets of said corporation.  The Terra Cotta Company, the Montserrat Mining and Manufacturing Company, John A. Gallagher and O. L. Garrison were parties defendant in that proceeding.   On the fourth day of June, 1891, said court rendered its decree in said cause, in which it found, that on the twenty-ninth day of June, 1889, the said Montserrat · Mining and Manufacturing Company became and was totally dissolved, insolvent, and unable longer to do business, and at said date ceased to do business, and this plaintiff was duly appointed receiver of the same."

The answer alleges:   "That all of said policies were made payable to F. E. Fowler, trustee, as his interest might appear, with the understanding and agreement, that any surplus remaining after the payment of the balance of said real estate note, amounting to $11,000, should be applied for the purpose of refunding said $400 so advanced by defendant Garrison, and paying said $2,700 note.   All of which was done by this defendant in pursuance of, and in accordance with, the agreement at the time he advanced said sum

of $400 to pay the premiums and take out said insurance."

The answer then concludes as follows: "Wherefore, by reason of the premises, this defendant says, that he had an equitable lien on said sums so derived from said insurance, and an equitable right to dispose of the same in the manner and for the purposes aforesaid."

The trial resulted in a judgment in favor of defendants, the dismissal of plaintiff's petition, and final judgment against him for costs, hence his appeal to this court.

The only contention is over the $2,764.84, the amount of the insurance money remaining in Garrison's hands, after paying the real estate note, and reimbursing himself on the premiums guaranteed for reinsurance, which was applied by him in payment of the $2,700 note for which, with interest on the same from the time Garrison received it, March 18, 1890, plaintiff claims he should have had judgment. That the property insured was that of the corporation of which plaintiff was appointed receiver is conceded, as well also as that defendant Garrison was its president; nor is its insolvency seriously questioned; it had been so declared by the circuit court of Johnson county, at the time of plaintiff's appointment, in a suit in which defendants herein were parties defendant.

It seems to be well settled law, that when a corporation becomes insolvent, its assets are a trust fund to be managed by its officers for the benefit of its creditors, and, after its insolvency, the directors can not, in equity, receive any advantage to themselves. *Roan v. Winn*, 93 Mo. 503; *Ward v. Davidson*, 89 Mo. 445; *Bent v. Priest*, 86 Mo. 475; *LaGrange, etc., Co. v. Bank*, 122 Mo. 154; *Foster v. Planing Mill Co.*, 92 Mo. 79.

VOL. 126—26

Suddath v. Gallagher.

It is difficult to perceive how the mere fact of indorsement on the policies of insurance, of "Loss, if any, payable to F. E. Fowler, trustee, as his interest may appear," even if there was an agreement entered into by him and Garrison, as alleged by defendant Garrison in his answer, that any surplus remaining after the payment of the balance of said real estate note should be applied for the purpose of refunding the $400 premiums advanced by him, Garrison, and the payment of said $2,700 note, could have in any way affected the rights of the creditors of said corporation of which plaintiff is receiver, if the money thus received belonged to it. At the time of the payment of the insurance money to Garrison the Montserrat Manufacturing Company was insolvent, had ceased to be a going concern, and the corporation in fact dissolved. Fowler had already retained all the money to which he was entitled under the policy, about which there is no controversy, and had paid the balance over to Garrison, who, if, because of the fact that he borrowed $2,600 on his own individual account to pay labor claims due by the corporation, subsequently taking its note therefor, which he and Gallagher indorsed to a St. Louis Bank, and the payment of the premiums by Garrison out of his own private funds on the policies of insurance, in order to keep them in force, to protect himself as indorser on said note, and the use of the borrowed money for the purpose of liquidating the claims of the laborers, he became subrogated to the rights of those whose claims were in this way satisfied, then the plaintiff was not entitled to recover. Otherwise, Garrison should account for and pay over the same to the receiver for the benefit of the creditors of the corporation.

That a policy of insurance may be placed on corporate property, by the officers of the corporation, for the

benefit of its creditors, by and with the consent of the insurance company issuing the policy, indorsed thereon, is perfectly clear. *Glover v. Lee*, 140 Ill. 102; *Hammel v. Ins. Co.*, 50 Wis. 240; *Glover v. Wells*, 29 N. E. Rep. 680; *Griswold v. Ins. Co.*, 70 Mo. 654.

Did Garrison, on payment of the labor claims with the money borrowed by him on his private account, become subrogated to the rights of those whose claims were satisfied, as against other creditors of the corporation?

By section 2538, Revised Statutes, 1889, all employees of any corporation for wages due, not exceeding $60, are entitled to be paid in preference to any other claim or demands not secured by specific liens on property, and they have priority of payment from the money and assets of the corporation in the hands of officers or agents, or any receiver or assignee, over every other claim not specifically secured.

There was no legal liability resting upon Garrison to pay the laborers their wages, nor was there any contract between him and them, so far as appears from this record, by which he was to succeed to their rights, which was only the right to be first paid from the assets of the corporation. No lien was given them by statute. Nor does it even appear who they were, or the amounts due them respectively. It seems to have been merely a voluntary payment on Garrison's part, and in such circumstances he was not entitled to be subrogated to their rights. "One who advances money to pay the debt of another, in the absence of agreement, express or implied, for subrogation, will not be entitled to succeed to the rights and remedies of the creditor so paid, unless their is some obligation, interest, or right, legal or equitable, on the part of such person, in respect of the matter concerning which the advance is made, as otherwise, he is a stranger, a volunteer, an intermed-

dler, to whom the equitable right of subrogation is never accorded." 24 Am. and Eng. Encyclopedia of law, 281.

In *Nolte v. Creditors*, 9 Martin (La.), 690, it was held that the law does not give to a party who furnishes money for the payment of a debt the rights of the creditor who is thus paid, but that he alone to whom the legal claim belongs, not to those who pay the debt, but only to him who, being bound for it, discharges it.

So in *Sandford v. McLean*, 3 Paige, 113, it was said: "It is only in cases where the person advancing money, to pay the debt of a third party, stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect. In other cases, the demand of a creditor which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benfit of such third person, is absolutely extinguished." This language was quoted with approval in *Ins. Co. v. Middleport*, 124 U. S. 534; *Desot v. Ross*, 95 Mich. 81.

As from these considerations it necessarily follows that the judgment must be reversed, and the cause remanded, it is not thought necessary to advert to other points discussed by respective counsel in their briefs. The judgment is reversed and the cause remanded.