JAMES BISSETT, Respondent, v. T. A. H. GRANTHAM *et al.*, Defendants; EXCHANGE BANK OF SPRING-FIELD, Appellant.

### St. Louis Court of Appeals, May 19, 1896.

1. **Mortgages:** EFFECT OF RELEASE BY MORTGAGEE. If a mortgage of land is released by the mortgagee after the note secured by it has been pledged by him as security for indebtedness, the release, though not valid as to the pledgee, is binding and effective as against the mortgagee and anyone to whom he transfers the note after its maturity.

2. ——: ——: SUBROGATION. And, if the mortgagee borrows money, and, pursuant to the prior agreement between himself and the lender, uses it in payment of the debt secured by the pledge, and then transfers the note to the lender as security for the loan, the lender will not, as against a *bona fide* purchaser for value from the mortgagor after the execution of the release, be entitled to be subrogated to the rights of the pledgee, but will, if the note was not negotiable at the time of the transfer to himself, be bound by the release.

*Appeal from the Greene Circuit Court.*—HON. JAMES T. NEVILLE, Judge.

AFFIRMED.

*John O'Day, O. H. Travers* and *E. C. O'Day*, for appellant.

*Goode & Cravens* for respondent.

BOND, J.—The defendants were, on final hearing of this case, perpetually enjoined from selling certain real property of the plaintiff under a deed of trust executed by its former owner. From this decree the defendant bank appeals, and assigns for error that, under the weight of the evidence, the decree is erroneous. Touching the substantial facts on which the decree rests there is no controversy, and hence we give a brief summary of the facts found by the decree, which are as follows:

On the fifteenth of February, 1892, one Kelley executed his negotiable note for $2,965.86 to one Horine, bearing date on said day and payable six months after date. To secure the payment of this note Kelley executed his deed of trust, conveying to the trustee two parcels of land in the city of Springfield. On the fourth day of March, 1892, Horine borrowed $3,000 from the Quincy National Bank, and executed to that bank his own promissory note for that sum, payable six months after date, annexed to which was Kelley's promissory note above mentioned which he delivered to said bank as collateral security. These two notes remained in possession of the Quincy bank from that date on until October 4, 1892, on which day Horine paid his indebtedness to that bank, and it returned to him his own note and the Kelley note.

Part of the money paying Horine's note to the Quincy bank was furnished by the defendant bank with a distinct understanding, that he should deliver to it the Kelley note as collateral security for the debt thus contracted as soon as he obtained possession of it. Horine executed his own note for $1,800 to the defendant bank, and, having released the Kelley note, turned it over as a collateral to his own note to the defendant bank. These are all the facts supporting the equities of the defendant bank. There were no direct dealings between the Quincy bank and the defendant bank at any time, and Horine never advised the Quincy bank of the new arrangement he had made.

While the two notes first above mentioned were owned by the Quincy bank, to wit, on the twentieth day of August, 1892, Kelley sold one of the parcels of land covered by the deed of trust to the plaintiff for $1,125, and, as part consideration of said sale, Horine by a proper instrument of writing on the margin of the record released the lot thus conveyed from the incumbrance created thereon by Kelley. The Kelley note for $2,965.86 was not produced by Horine when he executed the release on the margin of the record, nor did the law in force at that time require that this be done. Horine, however, stated to the plaintiff's agent and attorney that he as mortgagee had a right to release the deed, and the entire consideration for the purchase was paid into his hands.

The marginal release by Horine of the lien of the deed of trust on the lot purchased by plaintiff was inoperative against the Quincy bank, the then holder of the note secured by said deed of trust (*Mayes v. Robinson*, 93 Mo. 114; *Lee v. Clark*, 89 Mo. 553), but it was valid as against Horine or any transferees from him after the maturity of the note. *Turner v. Hoyle*, 95 Mo. 337. The undisputed evidence shows that the

Kelley note was overdue, when it was redelivered to Horine on the payment of his own note to the Quincy Bank for which the Kelley note had been pledged as collateral security. After the receipt of the Kelley note, which was indorsed in blank, Horine took it to the defendant bank and pledged it anew as collateral security for his own note to that bank given for a portion of the money with which he paid his indebtedness to the Quincy bank.

Upon these facts plaintiff maintains that the lien of the trust deed, securing the Kelley note, on the land purchased by him became extinct when that note was reacquired by Horine, and hence it could not be revived by a subsequent delivery by him to the defendant bank. *Henley v. Holzer*, 19 Mo. App. 245. To this defendant replies that, having furnished Horine a part of the money to pay his indebtedness to the Quincy Bank under an agreement with him that he would get the collateral pledged for such indebtedness and pledge it anew with the defendant bank for the security of the loaned money, it thereby acquired a title to such collateral by subrogation superior to the intervening rights of the plaintiff.

This contention can not be supported. Subrogation was borrowed from the civil law. It may take place in behalf of sureties or others paying an indebtedness for their protection, or it may arise upon a contract between a stranger and the debtor, whereby a creditor is paid by such third party in consideration of the transfer of securities held by the creditor. Nor is it essential to subrogation of the latter kind, or by convention, that the creditor should be a party to the agreement between the debtor and a third party, provided no intervening rights to the security have accrued. The rule is that subrogation by agreement between the debtor and a stranger is not applicable, where it would

prejudice the rights of innocent parties. Harris on Subrogation, sec. 792. The theory on which it is sustained in these cases is that the agreement between the debtor and a third party creates equitable rights, which should be enforced when they do not overthrow intervening equities. Of course, a stranger may be subrogated by a payment under an agreement with the creditor, irrespective of equities against the debtor, for the third party would then be a purchaser for value. Harris on Subrogation, sec. 797. But, if the creditor declines to deal with a stranger, then the latter, to be entitled at all, must have a contract with the debtor, and in such case can only become a beneficiary of a contract which the debtor has the *power* to make.

In the case at bar there would be no question as to the right of defendant to be subrogated, had it acquired the Kelley note under a contract with the Quincy bank. As this was not done, the defendant is relegated to its rights under the agreement had with Horine, the debtor. He could not convey a greater right or title to the Kelley note than he had at the time of the transfer. In his hands the note was not a charge upon plaintiff's lot, because he had expressly released its lien thereon by a method effective against himself. Hence, the note being overdue when he delivered it to the defendant bank as collateral, he simply transferred the right and title which he had at the time. The note in his hands, not being a lien on plaintiff's land, was necessarily not so after its delivery to defendant. The former contract between Horine and the plaintiff exempted the latter's land from the lien of the Kelley note, except in the hands of transferees for value in the usual course of trade. It was thus protected while in the hands of the Quincy bank. It lost this protection the instant it was redelivered after maturity to Horine. Being thus dishonored, his subsequent

transfer to the defendant passed the title subject to all defenses to which it was open in his hands.

The evidence shows that plaintiff and defendant acted in good faith in their dealings with Horine, and, if each had equal equities growing out of their respective agreements with him, that of plaintiff, being first in time, should be first in law. In the case of *Loewenthal v. McCormick*, 101 Ill. 143, the mortgage note was transferred by the creditor. Had the note in this case been transferred by the Quincy bank to defendant under an agreement between them, defendant would have been entitled to be subrogated to the full right of the Quincy bank to enforce the lien of the note. In the case of *Tradesmen's Building, etc., Association v. Thompson*, 32 N. J. Eq. 133, subrogation by convention was upheld; but it distinctly appeared that no intervening rights had attached to the security claimed. Hence, both of these cases have no application to the one at bar.

It is argued by defendant that, under his agreement with it, Horine might be deemed an agent to bring it the note from the Quincy bank. The facts negative this theory. The Quincy bank had no information of the relations existing between Horine and defendant. Upon the payment of his note, the Quincy bank transferred to Horine the collateral in his own right. It could not have done otherwise, because it had no information whatever that he was acting in any other capacity than its debtor in paying his own debt and taking up the collateral which he had pledged for its security. Whatever rights defendant had under its agreement with Horine were strictly *inter se*. This agreement being unknown to the Quincy bank, it was in nowise affected by it. As defendant's rights in the premises were measured by its agreement with Horine, it could only enforce the same to the extent he could

thereunder transfer rights in the Kelley note. As it has been shown that he had no power in law by a new disposition of this matured note to free it from defenses to which it was liable in his hands, we must hold that plaintiff's equity is available against defendant, and that the decree enjoining defendant from selling plaintiff's land to satisfy said note should be affirmed. It is so ordered. All concur.