SALLIE A. FOWLER, Respondent, v. MARY M. FOWLER et al., Appellants.

### St. Louis Court of Appeals, January 24, 1899.

1. **Subrogation:** PREPONDERANCE OF EVIDENCE. The right of subrogation or equitable assignment may arise in two ways. First, where the party claiming it has paid the debt of another for his own security; secondly, where such payment was in pursuance of a contract, express or implied with the debtor or creditor.

2. ———: ———. In the case at bar, the real understanding with, or promise by, plaintiff to her husband was that if circumstances required it she would use the insurance money to prevent the farm from being sold under the mortgages so that the children might be secure in a home during their minority; this, supplemented by the policy, which made the plaintiff the unconditional beneficiary, creates a preponderance of evidence against the idea of a trust.

*Appeal from the Ralls Circuit Court.*—HON. REUBEN F. ROY, Judge.

AFFIRMED.

DAVID WALLACE for respondent.

Mrs. Fowler paid the creditor's claim in full. Even if she had only paid a part of the debt, under the Missouri decisions, she would be entitled to proportionate share with the other creditors of the proceeds arising from the sale of the principal debtor's property, and for that purpose may be subrogated to all the rights of the remaining creditors, so as

to have the benefit of all the securities in their hands. "The doctrine is well settled that as soon as a surety has paid the debt, an equity arises in his favor to have all the securities, original and collateral, which the creditor held against the person, or property of the principal debtor, transferred to him, and to avail himself of them as fully as the creditor could have done for the purpose of obtaining indemnity from the principal. By paying the debt of the principal, the surety becomes entitled to be subrogated to all the rights of the creditor, so as to have the benefit of all securities which the creditor had for the payment of the debt, without any exception." Allison v. Sutherlin, 50 Mo. 274, loc. cit. 277. The payment of the debt by Mrs. Fowler did not extinguish the debt, but in equity, kept it alive for her benefit. And the payment operated in equity as an immediate assignment to her of the security held by Mr. Scarborough. Furnold v. Bank, 44 Mo. 336, loc. cit. 340. It was not necessary that Scarborough should have assigned the debt to plaintiff, as she was "upon equitable principles entitled to an assignment, and equity will consider that as done which ought to have been done, and if necessary for her protection, will decree an assignment to be made. 24 Am. and Eng. Ency. of Law [1 Ed.], pp. 204, 205 and 206. Subrogation is defined by Mr. Bouvier in the fifteenth edition of his Law Dictionary, to be "The substitution of another person in the place of the creditor to whose rights he succeeds in relation to the debt." "The principle is recognized by the common law in cases when upon payment the securities are transferred to a party having an interest in the payment." It is treated as the creature of equity, and is so administered as to secure real and essential justice without regard to form, and is independent of any contractual relation between the parties to be effected by it. (6 Neb. 219.) It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and

good conscience should have been discharged by the latter."
33 Gratten, 527; 43 Conn. 244.    Again, he says, "It is a
settled rule that in all cases where a party only secondarily
liable on an obligation is compelled to discharge it, he has
a right in a court of equity to stand in the place of the cred-
itor, and be subrogated to all his rights against the party
previously liable."    Bouvier Law Dic. [15 Ed.], pp. 676-
677.    In regard to the alleged "conversations of Mrs. Fow-
ler with her husband, touching the disposition of the insur-
ance money, agreements and understanding" so frequently
referred to by appellants in their brief, we wish to state that
such alleged statements, even if true, can not be regarded as
legal and competent evidence in this case, and though the
record does not show objections to such testimony by the re-
spondent, still objection was made at the time and through
oversight omitted therefrom, and we simply wish at this
time, to call the attention of the court to the incompetency
of all statements of Mrs. Fowler regarding conversations be-
tween herself and husband, on the ground that such conversa-
tions come clearly within the rule of prohibition.    R. S.
1889, sec. 8922; Shanklin v. McCracken, 140 Mo. 348, and
cases cited therein.

J. O. ALLISON for appellants.

The above admissions and declarations of the respond-
ent, and others of a similar nature found in the testimony,
being admissions and declarations against interest, are pre-
sumed in law to be true.    State v. Hollenscheit, 61 Mo. 307;
Shirts v. Overjohn, 60 Mo. 308; Windsor v. Railroad, 45
Mo. App. 123.    Trusts in personal property are not within
the statutes of frauds and may be established by parol.
Huetteman v. Viesselmann, 48 Mo. App. 582; Kramer v.
McCoughey, 11 Mo. App. 426.    When the respondent
turned over the draft to the administrator, to be applied in
payment of the mortgage debt, the trust became executed.

This fact is an exceedingly strong circumstance supporting and corroborating her declarations, that she was made beneficiary for that purpose. In Huetteman v. Viesselmann, 48 Mo. App. 588, the court says: "Trusts, too, may be implied, or may result from certain facts and circumstances requiring their existence for purposes of equity." Porter v. Bank, 19 Vt. 410. The facts and circumstances all point to the theory of a trust, and not to the theory of subrogation. If the court should hold that the evidence is not sufficient to constitute a trust, certainly it is sufficient to show that when Mrs. Fowler turned over the draft to the administrator, she made a complete and perfected gift of this fund to the administrator, for the payment of the  debt, which can not be recalled. Meyer v. Koehring, 129 Mo. 15; Brandon v. Dawson, 51 Mo. App. 237; Tygard v. McComb, 54 Mo. App. 85; Blatz v. Lester, 54 Mo. —. The doctrine subrogation does not apply in this case, because Mrs. Fowler had pledged all interests she had in the land to the paymet of the mortgage debt, by having signed the deed of trust with her husband. Subrogation will not be permitted in favor of one who is ultimately liable for the debt discharged. 24 Am. and Eng. Ency. of Law [1 Ed.], p. 192, and cases cited in notes. Her interest in the land, upon which the deed of trust was given, was already obligated to pay the debt, at the time she claims to have paid it, with the view of subrogation. The judgment is excessive. The Scarborough note that was secured by the deed of trust, was fully paid off and discharged, and the deed of trust released, in 1895. The note for $120 was given by James Fowler to William Wood, and James Fowler, only, was obligated to pay it. Mrs. Fowler paid this note, or the balance due on it, $120, on the fifteenth day of January, 1897. She was under no legal obligations to pay it, and in no sense can she be subrogated as to this part. As to this payment she was a volunteer, and the right of subrogation does not apply to volunteers. Kleiman v. Gieselman, 114 Mo. 437; Johnson v. Goldsby, 32 Mo. App. 560.

BOND, J.—Plaintiff asks to be subrogated to the rights of a mortgagee of one hundred and sixty acres of land conveyed by herself and husband, now deceased, to secure a debt of $2,000. About two years after the execution of the mortgage the husband insured his life for $2,000 in plaintiff's name. Upon the death of her husband a check for that amount was sent to her by the insurance company, which she indorsed and delivered to the administrator of her husband's estate to be paid on the debt secured by said mortgage. This was done and an additional $120 of accrued interest was also paid by plaintiff. The property mortgaged comprised the homestead of plaintiff and four minor children, who survived the husband; two of these were children of plaintiff, the other being the fruits of a former marriage of the husband. After hearing the evidence (hereinafter referred to) as to the transaction of payment by plaintiff of the mortgage debt, the court decreed her entitled to subrogation to that security. Defendants appealed.

The only question for review is whether under the principles of equity giving rise to the right of subrogation the preponderance of the evidence supports the decree. The right of subrogation or equitable assignment may arise in two ways. First, where the party claiming it has paid the debt of another for his own security. Secondly, where such payment was in pursuance of a contract, express or implied, with the debtor or creditor. Bissett v. Grantham, 67 Mo. App. 23; Fievel v. Zuber, 67 Texas 275; New Jersey Railway v. Wortendyke, 27 N. J. Equity, 658; Sandford v. McLean, 3 Paige, 117; Shinn v. Budd, 14 N. J. Equity, 234; Aga v. Hotchkiss, 97 N. Y. 395; Brown v. Rodgers, 126 Mo. 393. Bishop Eq. [4 Ed.] 396; Pom. Eq. Jur., section 1419, note. In the case at bar if nothing had appeared beyond the status of the parties, the payment of the mortgage debt by plaintiff, whose homestead right was conveyed in the instrument, would have entitled her to subrogation as for a

payment made to protect her own interest; but the evidence given by plaintiff clearly shows that she did not make the payment for this purpose, but paid the debt in pursuance of an agreement with her husband made when the insurance was effected in her favor, that the fund arising therefrom should be applied to discharge this particular mortgage, in the event he died before paying it off himself. On this point the plaintiff testified as follows:

"Q. I will ask you if Mr. Fowler didn't at the time he took out this life insurance, give you as his reasons for taking it out, that he wanted it to go toward paying off the debt on the place? A. Yes, sir, if he should die before he had paid it, I was to take it and pay it off.

"Q. That was the understanding with you—it was talked about when the policy was taken out? A. Yes, sir.

"Q. Was it not understood at the time, that Mr. Fowler wanted this money, in case of his death, to go to pay off this debt? A. Yes, sir, that was the way of it.

"Q. Then in case he paid off the debt before he died, then at the time of his death, the money was to go to you and be yours? A. Yes, sir, it was to be mine in case he paid it off before he died.

"Q. At that time you were made beneficiary? A. Yes, sir."

The evidence further showed that she indorsed the draft upon the policy in her favor to the administrator of her husband's estate to apply the proceeds to this mortgage; that she admitted to the agent of the insurance company, the cashier of the bank and the administrator of her husband, that it was to go to pay this debt under an agreement with her husband; that she never asked the mortgagee to assign his security to her, and had no contract express or implied with him or his agent to be substituted to his rights. The only other evidence as to her purpose in the matter was

her further statement in general terms that she intended by the payment of the mortgage debt to prevent a sale of her homestead. It is not shown in the record that she so expressed herself at any time before the trial of this case. She expressly says that when she gave the draft to the administrator to be applied to this mortgage, she "gave no reasons." In view of her own admissions, clear, full and explicit, as to the reasons and purposes which actuated her in paying of the mortgage, I hold that the preponderance of the evidence is against the theory that such payment was made in order to secure an equitable assignment in her favor of the mortgage debt. As it is not pretended that there was any contract, express or implied, at the time of the payment of the debt between plaintiff and any one representing the mortgagee, and as the mortgagor was then dead so that no such contract could then have been made with him, she was also not entitled to a subrogation by convention nor agreement. Being not entitled to this remedy in either of the cases provided by law, it necessarily follows that the decree of the lower court was erroneous. My associates, however, think the decree should be affirmed upon the theory that the evidence shows the wife paid her own money for the protection of a vested interest (homestead) in the land. It is therefore affirmed.

## SEPARATE OPINION OF JUDGE BIGGS.

I do not think that the plaintiff's case is fairly presented in the opinion written by Judge Bond, hence 1 have concluded to briefly state my views.

The defense to the action rests on two propositions of fact. First, that under an agreement with the assured the plaintiff held the insurance money in trust to pay the mortgage debt. Second, that the plaintiff made a gift of the insurance money to be used in removing the incumbrance.

In support of these propositions the defendants rely on the testimony of the agent who solicited the insurance and the subsequent declarations and testimony of the plaintiff. The agent testified that at the time the policy was written the deceased told him that his purpose in procuring the insurance was to secure the means of paying the debt on his homestead in case he should die without paying it, and he further testified that he was under the impression that the plaintiff was present and heard the conversation. In this he is contradicted by the plaintiff, who testified that she had no conversation with her husband concerning the policy until the next day after it was written, and that prior to that time she did not know that he intended to insure his life. When her entire testimony and her admissions as proved by other witnesses are considered, the real understanding with or promise to her husband was that if circumstances required it she would use the insurance money to prevent the farm from being sold under the mortgage so that the children might be secure in a home during their minority. In support of my conclusions I submit the following extracts from her testimony:

"Q. I will ask you Mrs. Fowler if you intended to make a gift of this money to your husband's estate? A. No, sir. I meant to save the place from being sold. * * *"

"Q. What was your purpose in paying that $2,000? A. To keep our home from being sold so we could all have a home." * * *

"Q. I will ask you if you did not turn it (the insurance money) over to Mr. James Fowler (administrator) and tell him that you understood from Mr. Fowler (deceased) that it was to go to pay off the mortgage? A. Yes, sir, but not to go to the heirs; nothing was said about a released deed. I did not know anything about it."

"Q. I will ask you if you did not turn it over to Mr. James Fowler to be used to pay the debt? A. Yes, sir, but not to go to the heirs. I did it to save the place from being sold. * * *"

"Q. I will ask you if there had been any talk between your husband and yourself, and if you knew he was going to have his life insured? A. No, sir, I did not."

"Q. The conversation you told Mr. Allison was after the policy was written, was it not? A. Yes, sir. * * *"

"Q. When you paid the money did you expect to receive its worth in the farm? A. Yes, sir, I did."

The foregoing testimony when supplemented by the policy, which made the plaintiff the unconditional beneficiary, creates a preponderance of evidence against the idea of a trust.

At the time the mortgage debt was paid the administrator of the estate induced the beneficiary and trustee in the deed of trust to execute a deed of release to the children of George Fowler, deceased, thereby vesting the legal title in them, subject only to the dower interest of plaintiff. This was in violation of plaintiff's equitable rights, and it made the present action necessary. I am, therefore, in favor of affirming the judgment.