JOHN B. FOSTER et al., Appellants, v. ROBERT W. WILLIAMS, Respondent.

Springfield Court of Appeals, May 2, 1910.

1. **EQUITY: Subrogation: Money Paid to Extinguish Lien on Land.** The rule is that the equitable doctrine of subrogation can be invoked to reimburse a party for money expended in extinguishment of a debt, lien or charge upon land, but the payment must have been made by one who, at the time had or, in good faith, supposed he had an interest in discharging the demand. Volunteers or strangers have no such right.

2. ———: ———: ———. Where a party owning an undivided interest in land pays money to extinguish the lien upon the land for the benefit of all the tenants as between him and his co-tenants, he would ordinarily be entitled to subrogation.

3. ———: ———: **Innocent Purchasers.** Where the rights of innocent purchasers have intervened, the right of subrogation will not be enforced to their prejudice.

4. **EQUITY: Judgment: Adjusting All Equities: Notice: Innocent. Purchasers.** It is a familiar principle that where a court of equity takes jurisdiction of the subject-matter, it will retain jurisdiction until it has adjusted all equities arising therein; so where judgment was rendered in a case permitting redemption from a sheriff's sale and two of the co-tenants were allowed to pay off the lien, but the court made no order allowing them a lien on the interests of the other co-tenants for the proportion paid for them, a purchaser of the interests of the tenants who had not paid might well presume that the court had adjusted all the equities and the judgment would not of itself impart notice that a lien existed on the interests he was purchasing.

5. ———: **Reviewing Evidence: Deferring to Trial Court's Finding on Evidence.** In equity cases the appellate court has jurisdiction to review the facts as well as the law, but the usual practice is to defer largely to the finding of the trial court when the evidence is oral and very conflicting.

6. ———: ———: ———. In an equity suit to establish a lien on land on the theory of subrogation when the plaintiffs as owners of an undivided interest in the land had paid off a lien for the benefit of all the tenants, defendant claimed to be an in-

nocent purchaser of the land with no notice or knowledge of the lien. The evidence is examined and, although held to be conflicting, the finding of the trial court on the evidence was deferred to and judgment in favor of defendant sustained.

7. ———: **Laches.** The courts of equity look with jealous eye on the laches of a party in asserting his claim.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Lamar, Barton & Lamar* for appellants.

(1) Plantiffs were entitled to pay the amount necessary to redeem from the sheriff's deed and be subrogated to the rights of Halley against the interests of their co-tenants. Parsons v. Urie, 8 L. R. A. (N. S.) 559. (2) "A purchaser is fixed with constructive notice of whatever appears in the conveyances constituting his chain of title." 23 Am. and Eng. Ency. Law (2 Ed.), 508; Tydings v. Pitcher, 82 Mo. 379; Bronson v. Wanzer, 86 Mo. 408; Mason v. Black, 87 Mo. 329; Hagerman v. Sutton, 91 Mo. 519; Patterson v. Booth, 103 Mo. 402; Knox Co. v. Brown, 103 Mo. 223; Loring v. Groomer, 110 Mo. 632; McDonald v. Quick, 139 Mo. 484; Turner v. Edmonston, 210 Mo. 411; Tracy v. Bittle, 213 Mo. 302; Poage v. Railroad, 24 Mo. App. 199; Abbe v. Justus, 60 Mo. App. 300; Jacobsmeyer v. Jacobsmeyer, 88 Mo. App. 102; Alabama C. & C. Co. v. Gulf Co., 7 L. R. A. (N. S.) 712; Kettle River R. Co. v. Eastern R. Co., 6 L. R. A. 111; Millsaps v. Estes, 70 L. R. A. 170.

*Dooley, Hiatt & Millard* for respondent.

(1) "Subrogation will not be enforced against a bona fide purchaser for value without notice." 27 Enc. Law (2 Ed.), 240; Bissett v. Grantham, 67 Mo. App. 23; Richards v. Griffeth, 27 Am. St. Rep. 156, 92 Cal.

493, 28 Pac. 484; Ahern v. Freeman, 24 Am. St. Rep. 206, 46 Minn. 156, 48 N. W. 677. (2) "Subrogation is a creature of equity and it must be enforced with due regard to the right, legal or equitable, of others. It cannot be invoked so as to work injustice or defeat a legal right or overthrow a superior or perhaps even an equal equity or displace an intervening right or title." Am. Bonding Co. v. Bank, 99 Am. St. Rep. 480; Makeel v. Hotchkiss, 83 Am. St. Rep. 131, 190 Ill. 311, 60 N. E. 524; Bissett v. Grantham, 67 Mo. App. 23. (3) Whether or not subrogation will be allowed in any particular depends upon the particular facts and circumstances in the case. It is not allowed as a matter of legal right, but only in order that real, essential justice be done in the particular controversy under consideration. Am. Bonding Co. v. Bank, 55 Atl. 395; Mosier's Appeal, 93 Am. Dec. 783, 56 Penn. 76; Boston Safe Dep. Co. v. Thomas, 59 Kan. 470, 53 Pac. 472; Altman-Miller Co. v. Bishop, 53 Neb. 545, 74 N. W. 55; Gordon v. Stewart, 96 N. W. 624; Bank v. Paulson, 57 Neb. 717, 78 N. W. 303; Hawker v. Moore, 40 W. Va. 49, 20 S. E. 848; Schieb v. Moon, 50 W. Va. 47, 40 S. E. 329. (4) In examining the judgment rendered by the Texas county court on May 27, 1905, defendant had a right to presume that the court had disposed of the whole matter. Reyburn v. Mitchell, 106 Mo. 366; Wehrs v. Sullivan, 217 Mo. 167; Frank v. Alexander, 88 Mo. App. 35; McDonald v. Frost, 99 Mo. 44.

NIXON, P. J.—This was an action in equity wherein plantiffs sought to fasten their claim for $73.34 with interest upon the share in certain lands which defendant obtained from one Marcus Gillispie.

The land in question originally belonged to plaintiffs John B. Foster and T. H. Britton, together with Marcus Gillispie and Phoeba Jeffries, Foster and Britton owning an undivided four-sixths and Marcus

Gillispie and Phoeba Jeffries each owning a one-sixth interest; but the ownership of these parties in the land was subject to a sheriff's deed held by one G. W. Halley.

Before the present litigation arose, John B. Foster, T. H. Britton and Phoeba Jeffries had filed an action in the circuit court of Texas county against G. W. Halley, the holder of the sheriff's deed, and Marcus Gillispie who refused to join as plaintiff, and on May 27, 1905, the court entered a decree in that case which is, in part, as follows:

"It is therefore ordered and decreed that plaintiffs and defendant, Marcus Gillispie, pay and they are hereby permitted to redeem said real estate from all liens, encumbrances and claims of every kind of the defendant G. W. Halley upon the payment of the sum of two hundred and twenty dollars to the clerk of this court for his use and benefit with interest thereon from this date at the rate of eight per cent until paid and upon such payment such sale and deed will be cancelled and set aside and for naught held and the title to said real estate will be vested as follows: Four undivided sixths in plaintiffs T. H. Britton and John B. Foster, and one undivided sixth in plaintiff Phoeba Jeffries, and one undivided sixth in defendant Marcus Gillispie.

"And now on the 27th day of May, 1905, comes into court plaintiffs John B. Foster and T. H. Britton and pay to the clerk thereof the sum of two hundred and twenty dollars for the use and benefit of defendant G. W. Halley.

"It is therefore ordered and decreed by the court that the sheriff's deed dated on the 12th day of November, 1903, purporting to convey to defendant G. W. Halley, all the right, title and interest of . . . to the following described lands in Texas county, Missouri, . . . be and the same is hereby cancelled and set aside and for naught held and all the right, title

and interest of the defendant G. W. Halley be and the
same is hereby divested and the title to the said land
be and the same is hereby vested as follows: Four un-
divided sixths in plaintiffs John B. Foster and T. H.
Britton, one undivided sixth in plaintiff Phoeba Jef-
fries, and one undivided sixth in defendant Marcus
Gillispie."

There is some mention in the record of an appeal
having been taken from said decree, but it was aban-
doned.

On October 29, 1906, by warranty deed, Phoeba
Jeffries conveyed her one-sixth interest in said land
to Marcus Gillispie. On August 8, 1907, Marcus Gil-
lispie, by warranty deed, conveyed all his interest in
said land—being his one-sixth and the one-sixth which
he had acquired from Phoeba Jeffries—to Robert Wil-
liams, the defendant herein, for a consideration of four
hundred dollars.

The petition in this case alleges that when in the
previous suit against G. W. Halley, the court ordered
that John B. Foster, T. H. Britton, Phoeba Jeffries
and Marcus Gillispie should pay two hundred and
twenty dollars to the use of G. W. Halley and thereupon
be permitted to redeem the land, Phoeba Jeffries and
Marcus Gillispie, although requested so to do, refused
to contribute their part of the said two hundred and
twenty dollars; that these plaintiffs, in order to pro-
tect their interests in said land, were forced to pay all
of the said two hundred and twenty dollars; that one-
sixth of said amount should have been paid by Phoeba
Jeffries and one-sixth by Marcus Gillispie, but that
they had never paid the same; that the part so ad-
vanced by plaintiffs for said Phoeba Jeffries and Mar-
cus Gillispie was $73.34, and that said amount is yet
due and unpaid; that defendant, Robert Williams, now
claims to own the said two-sixths and that the said real
estate in the hands of the defendant is subject to the
claim of these plaintiffs for the money so paid out as

aforesaid for the redemption, and that plaintiffs have no adequate remedy at law. Wherefore, plaintiffs prayed judgment against the defendant for the sum of $73.34 with interest thereon at six per cent from the 27th day of May, 1905, to be levied upon the said real estate.

Besides a general denial, the answer alleges that defendant at the time he bought the two-sixths of Marcus Gillispie acted in good faith and had no notice whatever of any claim of plaintiffs for money advanced to redeem the shares of Phoeba Jeffries and Marcus Gillispie in said land.

The trial court, after hearing the evidence, found the issues in favor of the defendant. Plaintiffs have appealed and the only ground relied on for reversal is that the finding of the chancellor was erroneous because against the evidence, the weight of the evidence, and the law under the evidence.

It will be seen from the decree that was rendered in the previous case that the parties thereto—John B. Foster, T. H. Britton, Phoeba Jeffries, plaintiffs, and Marcus Gillispie, a co-defendant—were tenants in common of the real estate in the first instance. The interest which G. W. Halley purchased at sheriff's sale gave him an equitable lien upon the land for the amount he paid for the same. The decree gave the tenants in common the right to redeem upon paying the sum of two hundred and twenty dollars, and as all the tenants in common were parties to that suit, they were all bound by the decree.

The rule is that the equitable doctrine of subrogation can be invoked to reimburse a party for money expended in the extinguishment of a debt, lien or charge upon land; but the payment must have been made by one who at the time had or in good faith supposed he had an interest in discharging the demand. Volunteers or strangers have no such right. [Roberts v. Best, 172 Mo. loc. cit. 81, 72 S. W. 657.] Under the terms of

the decree, the appellants were not mere volunteers or strangers in paying the two hundred and twenty dollars, and, having expended their money to extinguish the charge or lien upon the land for the benefit of all the tenants, as between them and their co-tenants, they would ordinarily be entitled to subrogation. If the interests of the tenants in common were severally bound for the payment of the entire debt of two hundred and twenty dollars, and the same was paid by the appellants to protect the title to the land, then such payment would give to them a lien upon the interests of the other tenants for whose equal benefit the payment was made. [Fowler v. Fowler, 78 Mo. App. 330; Burroughs v. Howell County, 180 Mo. 642, 79 S. W. 682.]

But the law is equally clear that where the rights of innocent purchasers have intervened, the right of subrogation will not be enforced to their prejudice. [Bissett v. Grantham, 67 Mo. App. l. c. 26, 27; Ahern v. Freeman (Minn.), 48 N. W. 677; Gerdine v. Menage (Minn.), 43 N. W. l. c. 93; Amick v. Woodworth (Ohio), 50 N. E. l. c. 431, and cases cited; Richards v. Griffith (Cal.), 28 Pac. l. c. 485.]

It therefore becomes necessary to inquire whether there is any substantial evidence tending to show that defendant Williams was a bona fide purchaser of the land.

The decree of the circuit court in the suit against Halley to have the sheriff's deed cancelled certainly contains nothing which would charge this defendant with notice of a claim held by John B. Foster and T. H. Britton against Phoeba Jeffries and Marcus Gillispie for a lien on the land. It was there ordered that Foster, Britton, Gillispie and Phoeba Jeffries should be permitted to redeem the land from all liens upon payment of two hundred and twenty dollars, and that

144 App—15

"upon such payment said sale and deed will be cancelled, set aside and for naught held and the title to said real estate will be vested as follows: Four undivided sixths in plaintiffs T. H. Britton and John B. Foster, and one undivided sixth in plaintiff Phoeba Jeffries and one undivided sixth in defendant Marcus Gillispie." The decree then recites that John B. Foster and T. H. Britton paid said sum into court, and the court set aside the sheriff's deed and ordered "that the title to said land be and the same is hereby vested as follows: Four undivided sixths in plaintiffs John B. Foster and T. H. Britton, one undivided sixth in plaintiff Phoeba Jeffries and one undivided sixth in defendant, Marcus Gillispie."

So far as defendant could know from the face of that decree, Phoeba Jeffries and Marcus Gillispie may have paid their proportionate shares of the two hundred and twenty dollars to Foster and Britton before the money was paid into court. The court in that case was sitting in equity and therefore empowered to adjust all equities arising between the parties; and it may well be said that defendant had a right to assume that such court of equity, having jurisdiction of the persons and the subject-matter of the controversy and having made a final disposition of the case without giving appellants any lien for money advanced, had adjusted all the equities arising therein under the familiar principle that where a court of equity takes jurisdiction of the subject-matter, it will retain jurisdiction until it has adjusted all equities arising therein. [Wehrs v. Sullivan, 217 Mo. l. c. 179, 116 S. W. 1104, and cases therein cited.] Although defendant testified that he did not read this decree before his purchase, had he done so, we are not prepared to say that notice of plaintiffs' claim would have been thereby imparted to him.

Defendant in his testimony stated positively that at the time he bought the land of Marcus Gillispie,

he had no notice whatever of any claim of Foster and Britton for money advanced under the decree; that he had paid Gillispie four hundred dollars for the land; that he searched the records of the recorder's office to see if there were any encumbrances on the land; that he found a mortgage for fifty dollars against Gillispie's portion of the land, but he ascertained that this had been satisfied. He then asked Gillispie: "Is there anything more against this land, Marcus?" And Gillispie said, "No."

T. H. Britton, in rebuttal, testified that some one told him Gillispie was trading the land to defendant and that he went to defendant the next morning and asked defendant if he would hold back eighty-six dollars and explained that it was to cover their claim for the money advanced; that defendant refused, saying he had examined the records and that there was nothing against the land. Britton and Foster also gave other testimony tending to show that defendant had notice of their claim.

Williams denied that Britton came to him and asked him to hold back eighty-six dollars and denied in positive terms all knowledge of plaintiffs' claim at the time he made the purchase.

It is thus seen that the evidence is in sharp and irreconcilable conflict. Upon this showing, the court found the issues for the defendant. The payment of the two hundred and twenty dollars by appellants was made on May 27, 1905. Not until the 17th day of April, 1908, did the appellants assert their claim, that being the date on which this suit was filed. The appellants were therefore guilty of some laches which a court of equity always looks upon with a jealous eye.

In equity cases, the appellate court has jurisdiction to review the facts as well as the law, but the usual practice is to defer largely to the finding of the trial court when the evidence is very conflicting. The reason for this deference is because of the superior ad-

vantages possessed by the trial court for weighing the evidence and judging the credibility of the witnesses, and this is more especially true where, as in this case, the witnesses have testified orally. [Parker v. Roberts, 116 Mo. 657, 22 S. W. 914; Mathias v. O'Neill, 94 Mo. l. c. 522, 6 S. W. 253, and cases cited; Lins v. Lenhardt, 127 Mo. 271, 29 S. W. 1025.]

Under the evidence in this case we see no reason for disturbing the judgment and it is hereby affirmed. All concur.