FIRST NATIONAL BANK OF MOUNT PLEASANT, IOWA, APPELLANT, V. WILLIAM DAVIS, APPELLANT, IMPLEADED WITH ROBERT W. BUCHANAN ET AL., APPELLEES.

FILED NOVEMBER 8, 1893. No. 5058.

**Chattel Mortgages:** LIENS: IDENTITY OF PROPERTY. The question in this case being merely whether or not two certain chattel mortgages covered property sold, and the evidence being insufficient to establish the identity claimed, the mortgagee's claim of a lien upon the property is denied.

APPEAL from the district court of Douglas county. Tried below before DAVIS, J.

*Saunders & Macfarland,* for appellant First National Bank.

*A. C. Wakeley,* for appellant William Davis.

*Holmes & Macomber,* for appellees.

RYAN, C.

The First National Bank of Mount Pleasant, Iowa, based its right to recovery in the district court of Douglas county, Nebraska, upon the alleged fact that as mortgagee it held a lien upon certain cattle sold by Robert W. Buchanan to divers and sundry persons through the commission firm of Byers, Patterson & Company at South Omaha, Nebraska. One mortgage was made by William Davis on January 18, 1888, to plaintiff's cashier, to secure payment by Davis of his note for $1,000 of even date with said mortgage, due in six months, and was filed for record December 21, 1888; an agreement for an extension of the time of payment of said note of six months having, meantime, been entered into between the maker and payee. Another mortgage between same parties as the first was of date August 9, 1888, to secure payment of a promissory note made by the mortgagor to the mortgagee, for the sum of $500, with ten per centum per annum interest, due in six months from its date, August 9, 1888. This mortgage was also filed for record December 21, 1888. The plaintiff alleged in its petition that Robert W. Buchanan, on or about December 19, 1888, being employed as a servant and agent of said mortgagor, obtained possession, or at least temporary control, of the mortgaged property, and having wrongfully transported the same to South Omaha, Nebraska, did sell that part of the same in respect of which relief was prayed in this action, and that as proceeds of such sale of the property last above referred to, Byers, Patterson & Company, the firm of commission merchants

through whom this sale was made, had received and were in possession of the sum of $742.38, which plaintiff claimed should be applied to the notes secured by the above mortgages. From the averments of the petition it appears that on December 21, 1888, the very day upon which the mortgages were filed in the proper office in Henry county, Iowa, plaintiff commenced an action in the district court of Douglas county, Nebraska, against Robert W. Buchanan and William Davis, to recover the value of the property mortgaged, and in that action procured the garnishment of Byers, Patterson & Company, with the hope of reaching the money held by them. This firm of commission merchants, to relieve themselves of liability, paid said money into the hands of the clerk of said district court. Subsequently the attachment was dissolved, and this action was commenced to restrain the clerk aforesaid from paying said money to said Buchanan, and for the enforcement of the mortgagee's lien as against the proceeds of the sale of the mortgaged property in the hands of said clerk.

The answer of William Davis admitted the facts to be as set forth in plaintiff's petition, and its prayer was that plaintiff should be decreed the relief prayed in its said petition. The answers of the other defendants, except that of Buchanan, simply pleaded the interest in the subject-matter of the controversy above indicated as being held by each of said defendants. Robert W. Buchanan answered, admitting the indebtedness of William Davis to plaintiff, but denying every other averment of plaintiff's petition. Buchanan further alleged that he was, previous to the sale, in the lawful possession of, and had the right to sell, the property which he did sell at South Omaha; that about March 17, 1884, he, the said Buchanan, entered into partnership with William Davis, his father-in-law, and that by the terms of the partnership agreement said Davis was to furnish stock to be placed upon the farm of William Davis' wife in Henry county, Iowa, and that said Bu-

chanan was to move upon and cultivate said farm, and raise and fatten stock thereon; that said Buchanan and Davis were equal copartners and owners of all the stock and crops raised on said farm; and that he was in the active charge and management of the business incident to the operation of said farm, and raising and fattening stock thereon, and had the power and authority to sell the same. Defendant Buchanan further alleged that the firm of which he was a member was never indebted to plaintiff, and that if William Davis executed a mortgage as claimed, it was to secure his own private debt and not that of the partnership, and that said defendant never consented to the making of said mortgages. This defendant averred that on December 20, 1888, he sold the property aforesaid as of right he had authority to do; that he was not insolvent; and admitted that Byers, Patterson & Company had paid into the hands of the district clerk aforesaid the proceeds of the sale of the aforesaid property, but denied that plaintiff had any claim or right thereto, and pleaded the order dissolving the attachment as an adjudication of the matters in controversy.

There was a reply in denial of the averments of the answer of Robert W. Buchanan. As between the defendants themselves there were other pleadings, the nature of which is not of importance in this controversy, as the issues are mere collateral incidents thereto. On the final hearing a judgment was rendered against the plaintiff, and therein it was ordered that the money in the hands of the clerk should be paid to Robert W. Buchanan, in whose favor the equities were, by the decree, found to exist.

The evidence was mainly directed to two questions of fact: First, the identity of the property sold in South Omaha with that mortgaged; second, the authority of Robert W. Buchanan to make the said sale. The cattle sold were thirteen two-year-old steers, three long yearlings, nine two-year-old heifers, and one cow. The mortgage

20

first made was of date January 18, 1888, and the cattle thereby mortgaged were described as fifteen head of two-year-old steers and five head of two-year-old heifers, while in the second mortgage made on August 9, 1888, the cattle were described as fourteen two-year-old steers and eight three-year-old steers. The sale at South Omaha was about, probably on, December 20, 1888. It is quite probable that cattle which were two years old in January of 1888 would ordinarily in the following December be classified as three-year-olds instead of two-year-olds. The testimony outside the mortgage itself does not help us to any conclusion whatever upon this point. In the mortgage of date August 9, 1888, there were cattle described as eight three-year-old steers. These of course could by no means be made to answer in December following to two-year-old steers. There were described in the last named mortgage fourteen two-year-old steers; but as to these which might meet the description of part of the cattle sold in South Omaha there arise other considerations just as troublesome to deal with as those just discussed.

The evidence of William Davis is that he sold Geesecke twenty two-year-old steers, but he said that he did not suppose he sold all the two-year-olds included in the mortgage to secure payment of the $500 note, because he did not sell enough cattle to cover those mortgaged, which amounted in value to over a thousand dollars. Robert W. Buchanan testified that these cattle were sold August 28, 1888; that they were brought to the farm something like twenty or twenty-one days before the date last named. As it was, according to his own evidence, the general custom for Mr. Davis to mortgage stock as soon as he bought it to secure the bank for the money used in making the purchase, it seems reasonable, in the conspicuous absence of proof to the contrary, that the mortgage of August 9 was executed to secure such part of the purchase price of these cattle as Mr. Davis borrowed of the bank for that purpose. At

any rate, this mortgage as clearly covered part of those sold Geesecke as any other cattle.   If, as contended on behalf of the bank, there were upon the farm August 9, the fourteen two-year-old steers covered by the mortgage made in January, and the twenty two-year-old steers afterward sold Geesecke, another difficulty would be presented, and that is, that the mortgage in no way segregated from the herd any particular cattle.   The same difficulty, less only in degree, is presented when it is taken into consideration that this mortgage was of fourteen two-year-old steers, when in fact there were twenty, any fourteen of which, if distinguished properly, would have met this description. The burden of designating the particular cattle mortgaged, was upon the mortgagee; and as the bank failed in this, it was not entitled to the proceeds of the sale made by Robert W. Buchanan, especially as there was evidence fully justifying the court in finding that he was joint owner of all the cattle raised on the farm occupied by him and his wife subsequently to March 17, 1884.

On this last proposition the evidence is conflicting as to the arrangement under which the farm was to be operated. Mr. Buchanan testified that on the date last named it was agreed between Mr. Davis and himself that he was to have one-half the crops and stock raised on the farm subsequently to the above date, in which he is corroborated by the testimony of his wife.   There is ample evidence of just such a continuous course of dealings as such an agreement would sanction from March 17, 1884, up to the time when the cattle were sold in South Omaha.   This is not, therefore, a case in which a mere stranger had taken away and sold cattle, but it is one in which the party by whom the sale was made was but exercising a contract right so to do.   The findings of the district court were fully justified by the evidence, and its judgment is therefore

AFFIRMED.