MIDLAND STATE BANK v. KILPATRICK-KOCH DRY GOODS COMPANY ET AL.

FILED APRIL 8, 1898. No. 8000.

1. **Chattel Mortgages: Contingency: Lien.** An instrument signed by the granting party thereto, not dated, which is taken by the grantee named therein under an agreement, to be retained until such time as the grantor notifies the grantee of a contingency, it being of the terms of the agreement that on such notification the instrument is to be completed and filed as a mortgage or lien on goods or chattels, does not become a completed mortgage until the grantor takes the action contemplated by the agreement.

2. ———: LIEN. As a general rule, and in absence of agreement to the contrary, the lien of a chattel mortgage on a stock of merchandise attaches to the articles in stock at the time of the execution of the instrument, and not to future additions to the stock.

ERROR from the district court of Douglas county. Tried below before BLAIR, J. *Affirmed.*

*McClanahan & Halligan,* for plaintiff in error.

*W. W. Morsman* and *R. B. Montgomery, contra.*

HARRISON, C. J.

On September 20, 1893, Oliver L. Templeton was engaged in business in South Omaha as a retail dealer in general merchandise, and on that date executed and delivered to the Kilpatrick-Koch Dry Goods Company a chattel mortgage on his stock of merchandise and store furniture, securing the payment of $2,905.78 due the company for goods sold and delivered to him by it. The balance of indebtedness on account was figured and evidenced by a promissory note of even date with the mortgage, to which we have just referred, taken as security for the payment of the debt. At the same time Templeton executed a mortgage on the property in favor of the Packers National Bank of South Omaha to secure the payment of an indebtedness to it. This latter mortgage was by its terms subject to the one in favor of the dry goods company. The last mentioned company filed its mortgage in the proper public office on the day of its execution and delivery and immediately took possession of the property and proceeded with a statutory foreclosure of its lien and realized from the sale of the goods, etc., of date October 20, 1893, the sum of $3,500. The mortgage to the Packers National Bank was also filed in the office of the county clerk of date September 20, 1893, the day of its execution. Subsequent to the assumption of possession of the mortgaged property by the dry goods company, the Midland State Bank caused this, an action of replevin, to be insti-

tuted in the district court of Douglas county, and the property was taken under the writ, but, the plaintiff failing to execute the necessary bond, was returned to the dry goods company. The claim of the bank of right of possession of the property in suit was predicated on its ownership, as assignee of W. G. Templeton (a brother of O. L. Templeton, the merchant and owner of the property), of two notes and an asserted chattel mortgage to secure their payment, also as the owner of a note running in terms to the plaintiff bank and a chattel mortgage as security for the payment of the debt of which the note was evidence, both of which chattel mortgages were alleged to be subsisting liens prior and superior to the liens of the dry goods company and Packers National Bank. The latter came into the suit by intervention. Issues were joined, and at the trial thereof before a jury that body was given a peremptory instruction to return a verdict in favor of the dry goods company and the Packers National Bank. This the jury did and judgment was in the due course of procedure rendered on the verdict.

Of the assignments of error in the petition presented in this proceeding on behalf of the Midland State Bank the one urged is that in which the complaint is of the action of the court in instructing the jury as we have hereinbefore stated. The trial court excluded from the evidence the alleged mortgage to the plaintiff in error, and in the condition of the record and pleadings in the case in this court such instrument cannot enter into our consideration of the points discussed under the main subject of objection and argument, the giving of the peremptory instruction.

As we view the record, one question to which considerable attention has been given by counsel for plaintiff in error in the brief filed—that is, the fraudulent or *bona fide* character of the asserted chattel mortgage by the merchant to his brother as between the parties litigant —has no force, for at least two sufficient reasons.

First—The instrument under which the plaintiff asked

a remedy was signed without date; its time of execution was alleged as of July 25, 1893, and it was of the testimoney that it was signed August 12, 1893. Mr. O. L. Templeton, the merchant, the man who signed the instrument, was called as a witness for plaintiff and testified as follows:

Q. What is your name?

A. O. L. Templeton.

Q. Was you in business in the city of South Omaha during the year 1893, and up until about the 20th of September?

A. Yes, sir.

Q. Are you the man who executed the chattel mortgage to the Kilpatrick-Koch Dry Goods Company?

A. Yes, sir.

Q. And to the Packers National Bank?

A. Yes, sir.

Q. On the day and at the time when those mortgages were made, or prior to that time, had you given to any one other than the Midland State Bank any chattel mortgage, bill of sale, or other contract which might become a lien upon the goods there?

A. I had never given any.

And in cross-examination stated:

Q. You had never given any? What do you mean by that?

A. I meant that I had never given any mortgage to any one for that stock prior to this mortgage given to the Kilpatrick-Koch Dry Goods Company.

W. G. Templeton, a brother who was named in the instrument as grantee, gave testimony of the execution of the notes by his brother, and this paper as a mortgage to secure their payment, and in cross-examination stated of the mortgage:

Q. I observe, Mr. Templeton, that the first of these two mortgages about which you have been interrogated— that is, the one which you say was given by your brother to you to secure the sum of $1,700—bears no date. Why was it not dated?

A. Because he had agreed to pay the other mortgage due to the bank first and I did not want to hold a mortgage off of the record and show that it was of so ancient a date.

Q. Then I understand the agreement between you and your brother was that the date should be filled up at the time when it was going to be recorded, was it?

A. That was the understanding; yes, sir.

Q. And that it should not be recorded for the time being?

A. That was the agreement.

Q. Why did you agree with him not to record it for the time being?

A. Because I wanted him to continue in the business and pay the debts.

Q. All of the debts?

A. Yes, sir.

Q. Then your object was to avoid embarrassing his business.

A. That was it, and to protect myself.

Q. But I am speaking with reference to the agreement to withhold it from record?

A. Yes, sir.

Q. So that he might go on with his business just as if you did not have any mortgage; is that right?

A. I answered your question, I think.

Q. So that he might go on with the business just as if you did not have any mortgage; is that right?

A. So that he might continue his business and pay the debts.

Q. And he did continue in the possession of the property?

A. He did.

Q. Buying and selling goods, just as if you did not have any mortgage?

A. I presume he did.

Q. Well, you know he did, don't you?

A. Yes, sir; I know he continued in business after I took the mortgage.

Q. And what was your agreement with reference to the time that it should be recorded?

A. The agreement was that if the contingency arose that made it necessary that he would come and let me know and that I would put the mortgage on record and that would protect myself.

Q. He was to let you know when some contingency arose that would make it necessary to record that instrument?

A. That is what I said.

Q. And he did not, of course, tell you of any contingency of that character, did he?

A. He did not.

It seems beyond doubt, from this testimony and other facts and circumstances of the transaction not bearing so directly thereon, but of a tendency to show its nature and effect, that it was not a completed mortgage or lien and was not to be until some contingency arose or for some reason, the sufficiency of which was to be determined by the prospective mortgagor, he should move in the matter, and a date which would not tend to discredit the instrument as a mortgage was to be inserted and the completed mortgage filed; for no doubt when the witness used the word "recorded" in referring to what should be done with the instrument, if ever completed, he meant filed, or made a matter of record in the authorized method. It was not shown that the contingency ever arose; the instrument never became complete; was allowed to remain imperfect; hence never became operative as a mortgage or lien on the property.

Second—The instrument under which the plaintiff made claim to possession of the property was sought to be established as a lien of date not later than August 12, 1893. It was disclosed that the merchant who signed it remained in possession of the stock of merchandise and sold articles therefrom in the usual course of a retail trade and added to the stock from time to time. If the instrument declared upon by the plaintiff had become of said

date a complete mortgage, and therefore a lien, it would have been on the property then in the store and not on subsequently acquired articles of merchandise, and it would have devolved on plaintiff to show that the property in litigation was that in stock at the time it asserted its lien became operative. On this point there was an entire lack of evidence. (See *Tallon v. Ellison*, 3 Neb. 74; *Gregory v. Whedon*, 8 Neb. 376; *Wedgewood v. Bank*, 29 Neb. 166; *Bank v. Davis*, 38 Neb. 238; *Williams v. Evans*, 6 Neb. 216.)

It follows further from the conclusions reached herein that the trial court's action in directing the verdict by instruction as it did was not erroneous. The judgment is therefore

AFFIRMED.