PLATTE VALLEY CATTLE CO. v. BOSSERMAN-GATES LIVE STOCK & LOAN CO.

(Circuit Court of Appeals, Eighth Circuit. December 16, 1912.)

No. 3,741.

(Syllabus by the Court.)

1. APPEAL AND ERROR (§ 205*)—RECEPTION OF EVIDENCE—OFFER OF PROOF —PROPOUNDING QUESTIONS—NECESSITY.

In the federal courts an assignment as error of a rejection of an offer to prove certain facts without propounding any questions to a witness properly raises the issue of the admissibility of competent proof of those facts which will be determined by the appellate courts on its merits and on the presumption that the offer was made in good faith.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1281, 1282; Dec. Dig. § 205.*]

2. CHATTEL MORTGAGES (§ 267*)—FORECLOSURE SALE BY MORTGAGOR—INTERMEDIATE LIENS.

A sale by a mortgagor of chattels, in whom is the legal title, with the consent of the first mortgagee, without notice to intermediate lienholders, does not foreclose their liens, although the sale is made for the full value of the property, and the proceeds are applied to the payment of the debt secured by the first mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 550–552; Dec. Dig. § 267.*]

3. SUBROGATION (§ 27*)—PURCHASER OF FIRST LIEN.

A third person, not a volunteer, who pays and procures a release of a first lien upon property under an agreement with the owner that as pur-

chaser or first lienor he shall have the pecuniary benefit of such payment, becomes subrogated in equity, as against an inferior lienor whose burden is not increased by such subrogation, to the rights held by the first lienor before the payment was made.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 68; Dec. Dig. § 27.*]

**4. COURTS (§ 342*)—FEDERAL COURTS—STATE PRACTICE—LAW AND EQUITY— DISTINCTION.**

In the federal courts the general rule is that the difference between causes of action at law and in equity is sedulously preserved, that a legal cause of action cannot be maintained in equity nor can equitable causes of action or defenses avail in actions at law, and this although they are permissible in the state courts of the district, and the distinction between the forms of actions at law and suits in equity has been there abolished.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 912, 913; Dec. Dig. § 342.*]

**5. ACTION (§ 24*)—EQUITABLE—DEFENSES.**

One in actual possession of personal property holding the right to that possession and an interest in the property by subrogation to the rights of a superior lienor may prove, in an action at law in the federal courts in defense of his possession and interest against a claim of an inferior lienor, the facts which establish the subrogation.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 153–155; Dec. Dig. § 24.*]

In Error to the District Court of the United States for the District of Nebraska; W. H. Munger, Judge.

Action by the Bosserman-Gates Live Stock & Loan Company against the Platte Valley Cattle Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions to grant a new trial.

Louis Quarles, of Milwaukee, Wis. (George Lines, W. M. Spooner, and F. C. Ellis, all of Milwaukee, Wis., and E. A. Cook, of Lexington, Neb., on the brief), for plaintiff in error.

J. J. Halligan, of North Platte, Neb. (W. T. Wilcox and J. G. Mothersead, both of North Platte, Neb., on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judge, and McPHERSON, District Judge.

SANBORN, Circuit Judge. The Bosserman-Gates Live Stock & Loan Company, a corporation, brought an action of replevin against the Platte Valley Cattle Company, a corporation, for cattle in the latter's possession on the ground that the plaintiff had a special property therein of the value of $12,000 by virtue of a chattel mortgage thereof made by R. D. Brown on December 7, 1909, wherein default in the payment of the debt had been made. The defendant denied the averments of the plaintiff's complaint. Two hundred and eighty cattle were taken from the defendant under the writ of replevin and delivered to the plaintiff at the commencement of the action, and the verdict and judgment were that the plaintiff recover 1 cent damages for the detention of these cattle and $924, the value of certain cattle

in the possession of the defendant which the plaintiff did not obtain by virtue of its writ.

The defendant offered to prove these facts at the trial: All these cattle had been mortgaged by R. D. Brown to the Welpton Investment Company to secure his debt of $10,000 to that corporation on May 25, 1909, more than six months before the mortgage to the plaintiff was given. This mortgage had been duly filed for record on May 26, 1909. About May 9, 1910, Brown sold these cattle for their full value to the defendant under an agreement between the Welpton Company, Brown, and the defendant that the purchase price realized by the sale should be applied first to the payment of Brown's mortgage debt to the Welpton Company, and that the remainder only should be paid to him. This agreement was performed. The sum of $12,-700 was due to the Welpton Company on its mortgage debt. This was paid out of the proceeds of the sale, and the remainder, $400, was paid to Brown. Thereupon the Welpton Company released its mortgage, and Brown made a bill of sale to the defendant. The defendant was in possession of the cattle pursuant to this transaction when this action was commenced and they were taken from it under the writ of replevin. An objection to the defendant's offer to prove these facts was made on the ground that they were incompetent, irrelevant, and improper under the issues. That objection was sustained, and this ruling is the first error assigned.

[1] Counsel for the defendant argue that there was no error in the rejection of these facts, whatever their relevancy may have been, because there was no witness on the stand and no question calculated to elicit these facts was propounded before or when the offer was made. When an offer of proof is made, the trial court, if it suspects bad faith, may undoubtedly in its discretion require counsel to produce his witnesses and to propound pertinent questions to them, but such an offer is often the most convenient and satisfactory method of presenting decisive issues of law upon the trial. In the absence of evidence of bad faith, it is presumed to be made in good faith and in the federal courts an assignment as error of a rejection of an offer to prove certain facts without propounding any questions to a witness calculated to elicit them, properly raises the issue of the admissibility of competent proof thereof, and this issue will be determined by the appellate courts on its merits and on the presumption that the offer was made in good faith. Scotland County v. Hill, 112 U. S. 183, 186, 5 Sup. Ct. 93, 28 L. Ed. 692; Missouri Pacific Ry. Co. v. Castle, 172 Fed. 841, 844, 97 C. C. A. 124, 127; Scotland County v. Hill, 132 U. S. 107, 113, 10 Sup. Ct. 26, 33 L. Ed. 261; Scotland County Court v. Hill, 140 U. S. 41, 42, 11 Sup. Ct. 697, 35 L. Ed. 351. The real question in this case, therefore, is whether or not the facts offered present a defense in whole or in part to the plaintiff's claim in this action.

[2] There were two issues in the case—the right of possession of the cattle and the value of the plaintiff's special property therein by virtue of its mortgage. Before the sale to the defendant, Brown was in possession of the cattle and the Welpton Company had the right of possession because it held the first mortgage upon them and the

debt which that mortgage secured was due and unpaid.  As it is conceded that the full value of the property was $13,100 the value of the plaintiff's special property in the cattle was $400, and the Welpton Company had the right by seizure and foreclosure to take and apply $12,700 of the value of the cattle to the payment of the debt due to it.  The plaintiff contends that the facts tendered were inadmissible in evidence because their legal effect was to increase its special property in the cattle $12,700 and to leave the defendant, the purchaser, without right of possession to or interest in the cattle for which it had paid $13,100.  On the other hand, the defendant insists that the effect of the transaction portrayed by these facts was to vest in the purchaser all the rights of possession of the cattle and the property interests which, before that transaction, were held by both the Welpton Company and Brown.  Counsel for the defendant claim that this effect is wrought by the defendant's actual and rightful possession of the cattle, the foreclosure of the first mortgage effected by Brown's sale and the subrogation of the defendant to the rights which the first mortgagee had before its mortgage was released.  The actual possession of the cattle by the purchaser, the defendant, at the commencement of the action is conceded.  The claim that the first mortgage was foreclosed is founded on the proposition that a sale of mortgaged chattels by the mortgagor for their full value and the application of the proceeds of the sale to the payment of the claim of the first mortgagee with his consent forecloses all right of redemption of the holders of inferior liens, and vests a complete title as well as the right of possession in the purchaser.  There is respectable authority for this position (2 Cobbey on Chattel Mortgages, 1298; Faeth v. Leary, 23 Neb. 267, 36 N. W. 513), but it is illogical and unjust.  It took its rise when and where the law was that a chattel mortgage vested the legal title in the mortgagee leaving naught but the right of redemption in the mortgagor, and that, upon default, the title of the mortgagee became absolute.  When the case of Faeth v. Leary was decided, the law of Nebraska was that the legal title to mortgaged chattels was vested in the mortgagee subject only to the right of redemption in subordinate lienholders.  Adams v. Nebraska City National Bank, 4 Neb. 370; Gillilan v. Kendall & Smith, 26 Neb. 82, 42 N. W. 281, 18 Am. St. Rep. 766.  But, when the mortgages in this case were made, that rule had long been reversed, and the legal title to the cattle remained in the mortgagor, and the mortgages evidenced nothing but liens upon it in the mortgagees.  Musser & Co. v. King, 40 Neb. 892, 59 N. W. 744, 42 Am. St. Rep. 700; Drummond Carriage Co. v. Mills, 54 Neb. 417, 74 N. W. 966, 40 L. R. A. 761, 69 Am. St. Rep. 719; Midland State Bank v. Kilpatrick-Koch Dry Goods Co., 54 Neb. 410, 74 N. W. 837.  Before the sale, therefore, Brown held the legal title, the Welpton Company had the first lien, and the plaintiff had the second lien upon these cattle.  The plaintiff had the right to pay Brown's debt to the Welpton Company, and then to take and sell the property to pay that debt and its own original claim.  The statutes of Nebraska prescribe a method of foreclosure by public sale after a public notice.  2 Cobbey's Ann. Statutes 1909, §§ 3901–3907.  Under such a foreclosure notice to the second mortgagee and an op-

portunity to buy the property or to redeem from the lien of the first mortgagee before the sale is made are at least presumptively given. The contention that a sale of the property for its full value by the mortgagor and the first mortgagee without notice to subordinate lienholders and the application of the proceeds of the sale to the payment of the claim of the first mortgagee can inflict no injury upon the subordinate lienholders, and hence may well be held to be in effect a foreclosure of the first mortgage, is not convincing. What the full value of personal property is at a given time is frequently uncertain, and it often becomes difficult, and sometimes almost impossible, to prove its value, especially after the property has disappeared. It is not conducive to the security of subordinate liens to permit the mortgagor and first mortgagee or lienholder to foreclose and destroy the former by a mere private sale of the mortgaged property at a price they deem its full value without notice to the holders of the inferior liens. The only safe rule is to make the consent of all parties in interest, or a legally published or other sufficient notice, an indispensable requisite of a foreclosure of a chattel mortgage by sale or otherwise. And our conclusion is that a sale by a mortgagor of chattels, in whom is the legal title, with the consent of the first mortgagee without notice to intermediate lienholders, does not foreclose their liens, although the sale is made for the full value of the property, and the proceeds are applied to the payment of the debt secured by the first lien. Lovejoy v. Merchants' State Bank, 5 N. D. 623, 67 N. W. 956; Backhaus v. Buells, 43 Or. 558, 72 Pac. 976, 73 Pac. 342; Swank v. Elwert, 105 Or. 487, 105 Pac. 901, 905; Templeton v. Lloyd, 59 Or. 50, 115 Pac. 1068.

[3] But a third person, not a volunteer, who pays and procures a release of a first lien upon property under an agreement with the owner that as purchaser, or first lienor, he shall have the pecuniary benefit of such payment, becomes subrogated in equity, as against an inferior lienor whose burden is not increased by such subrogation, to the rights held by the first lienor before the payment was made. Memphis & Little Rock R. R. Co. v. Dow, 120 U. S. 287, 301, 7 Sup. Ct. 482, 30 L. Ed. 595; Cumberland Building & Loan Ass'n v. Sparks, 111 Fed. 647, 651, 652, 49 C. C. A. 510, 514, 515; In re Lee, 182 Fed. 579, 583, 105 C. C. A. 117, 121; Miller v. Stark, 61 Ohio St. 413, 56 N. E. 11, 12; Hobgood v. Schuler, 44 La. Ann. 537, 10 South. 812, 813; Fowler v. Fowler, 78 Mo. App. 330, 337; Wilson's Guardian v. Wilson (Ky.) 50 S. W. 260, 263; Association v. Thompson, 32 N. J. Eq. 133; Tyrrell v. Ward, 102 Ill. 29; Bank v. Bierstadt, 168 Ill. 618, 48 N. E. 161, 61 Am. St. Rep. 146; Draper v. Ashley, 104 Mich. 527, 62 N. W. 707; Wilton v. Mayberry, 75 Wis. 191, 43 N. W. 901, 6 L. R. A. 61, 17 Am. St. Rep. 193; Levy v. Martin, 48 Wis. 198, 4 N. W. 35; Trust Co. v. Peters, 72 Miss. 1058, 18 South. 497; Dillon v. Kauffman, 58 Tex. 696. This is a just and reasonable rule. It effects the intention of the parties, preserves to the payor the benefit of his payment, leaves the inferior lienor in his former position, inflicts no injury upon him, prevents injury to the payor through mistake or ignorance of the inferior lien, and works exact justice to all. The facts tendered in the offer bring the case at bar clearly within this rule. The defend-

ant was not a volunteer. It was a purchaser. It paid the first lien to obtain the pecuniary benefit of its payment as vendee in accordance with the terms of its contract of purchase with the owner. Its subrogation to the rights of the first mortgagee imposes no additional burden upon the second mortgagee, but leaves it in its former position. And the undoubted effect of the transaction was that, while between the first mortgagee and the debtor Brown the defendant's payment and the first mortgagee's release of its mortgage estopped the latter from thereafter enforcing its claim against Brown, it subrogated the defendant in equity as against the second mortgagee to all rights held by the first mortgagee before the sale.

[4] Counsel for the plaintiff, however, meet this situation with the contention that subrogation is an equitable defense which may not be successfully pleaded or proved in this action at law. The doctrine of subrogation is, indeed, the creature of equity, and it is true that in the federal courts the general rule is that the difference between causes of action at law and in equity is sedulously preserved, that a legal cause of action cannot be maintained in equity, nor may equitable causes of action or equitable defenses avail in actions at law, and this although they are permissible in the state courts of the district and the distinction between the forms of actions at law and suits in equity has been there abolished. Bagnell v. Broderick, 13 Pet. 436, 10 L. Ed. 235; Bennett v. Butterworth, 11 How. 669, 13 L. Ed. 859; Thompson v. Railroad Co., 6 Wall. 134, 18 L. Ed. 765; Foster v. Mora, 98 U. S. 425, 25 L. Ed. 191; Northern Pacific R. R. Co. v. Paine, 119 U. S. 561, 7 Sup. Ct. 323, 30 L. Ed. 513; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358; Lindsay v. First National Bank, 156 U. S. 485, 493, 15 Sup. Ct. 472, 39 L. Ed. 505. Under this rule the remedy of a defendant, who has an equitable defense in an action at law, is to bring a suit to enjoin the prosecution of that action until the validity of the defense can be heard and decided in equity. And, if this had been done in this case, this action would undoubtedly have been stayed by the court below until the validity of the defense indicated by the facts tendered could have been determined.

[5] Most general rules, however, have their exceptions, and this one is not unique in this respect. Ever since the establishment of jurisdiction in equity, equitable causes of action and equitable defenses have been creeping into and receiving recognition and approbation in actions at law. Recoupment was an equitable defense. It crept from courts of chancery to courts of law, and was there admitted to avoid the expense of suits in equity and to prevent circuity of action. Reab v. McAlister, 8 Wend. (N. Y.) 110; Nashville Trust Co. v. Fourth National Bank, 91 Tenn. 336, 18 S. W. 822, 15 L. R. A. 710; Williams v. Neely, 134 Fed. 1, 4, 67 C. C. A. 171, 69 L. R. A. 232.

Estoppel in pais is a creature of equity. But since the decision of the Supreme Court in Dickerson v. Colgrove, 100 U. S. 578, 583, 584, 25 L. Ed. 618, it is equally available in actions at law even in the federal courts. Drexel v. Berney, 122 U. S. 241, 253, 7 Sup. Ct. 1200, 30 L. Ed. 1219; Wehrman v. Conklin, 155 U. S. 314, 327, 15 Sup.

Ct. 129, 39 L. Ed. 167; Cornwall v. Davis (C. C.) 38 Fed. 878, 882, 4 L. R. A. 563; City of Cleveland v. Cleveland, C. C. & St. L. R. Co. (C. C.) 93 Fed. 113, 123.

In Reagan v. Aiken, 138 U. S. 109, 112, 113, 114, 11 Sup. Ct. 283, 284 (34 L. Ed. 892), several creditors who were mortgagees in a chattel. mortgage brought an action at law against the marshal and his sureties for the value of the mortgaged property which the marshal had seized and converted under a writ against the mortgagor. The defendants answered that the debt secured by the chattel mortgage had been secured by a mortgage on real estate also, and that the real estate had been sold and the proceeds applied in part payment of the claims of the creditors secured by the chattel mortgage. This answer was met by the objection that an accounting was necessary under the defense pleaded to ascertain the respective amounts due to the various chattel mortgagees, and that an accounting could be had in a suit in equity only. But the Supreme Court held that the defense presented the question of partial payment of the indebtedness, that "how it was made was immaterial; the fact and the amount were the substantial matters and these were matters provable and determinable in an action at law." May it not be said in the case in hand that the values of the respective interests of the contestants here in the mortgaged property were substantial matters, that it was not material how these parties acquired their interests, so that they actually had them, and that these values were provable and determinable at law?

Dickerson v. Colgrove, 100 U. S. 578, 583, 584 (25 L. Ed. 618), was an action of ejectment, and the defense was an estoppel in pais. This defense was challenged on the ground that it was not available at law. But the court held that the right of possession and the title of the plaintiff's grantor inured by virtue of the estoppel to the defendant who was in actual possession of the land and that this defense of estoppel in pais could be pleaded and proved at law. Speaking of the action of ejectment the court said:

"This is a possessory action, and the plaintiff, to entitle himself to recover, must have the right of possession; and whatever takes away the right of possession will deprive him of the remedy of ejectment. * * * This is the rule laid down by Lord Mansfield in Atkyns v. Hoarde, 1 Burr. 119. 'Ejectment,' says he, 'is a possessory remedy, and only competent where the lessor of the plaintiff may enter, and every plaintiff in ejectment must show a right of possession as well as of property.' If the plaintiff in the present case was not entitled to possession, how, according to this authority, could he recover? If he had recovered, and a court of equity would have enjoined him from executing the judgment by a writ of possession, we ask, again, how could he recover in this action? Is not the concession that relief could be had in equity fatal to the proposition we are considering? * * * The reason given for the rule of inurement and estoppel by virtue of conveyances is that it avoids circuity of action. Does not the same consideration apply with equal force in cases of estoppel in pais? Why is it necessary to go into equity in one case and not in the other? * * * The common law is reason dealing by the light of experience with human affairs. One of its merits is that it has the capacity to reach the ends of justice by the shortest paths. The passage of a title by inurement and estoppel is its work without the help of legislation. * * * Whether the title passed or not, the fact that the plaintiff was not entitled to possession of the premises was fatal to the action."

Why is not the reason of this opinion equally applicable to the case at bar? The action of replevin is a possessory remedy. If the plaintiff was not entitled to possession, it could not maintain the action. The defendant was in the actual possession of the cattle. By virtue of its subrogation as against the plaintiff, to the rights of the first mortgagor in the payment of whose claim default had been made before the sale, it had the right of possession until the plaintiff redeemed the cattle from the lien of that mortgage. If the defendant had brought its suit and set up its right by subrogation, a court of equity would have enjoined the prosecution of this action at law until the defendant's equitable claim was tried, and if found good, until the plaintiff redeemed the property from the first mortgage, and such a court may yet enjoin the execution of the judgment in this action in such a suit. Why should the defendant be driven to this circuity of action? Why is it more necessary for it to go into equity to sustain the right to its possession of these cattle and its interest in this property which inured to it by subrogation than it would have been if they had inured to it by estoppel? No sound reason occurs to us. If the defendant was asking aid, if it was seeking affirmative relief from the court to enforce its subrogation in order to obtain possession of the mortgaged property, or to foreclose its lien and cut out the right of the plaintiff to redeem therefrom, it may be that a resort to equity would be necessary. But it is using its subrogation not as a sword, but as a shield. That subrogation furnishes a good reason why the plaintiff was not entitled to the possession of this property when it sued out its writ, why it was not entitled to that possession until it redeemed from the first mortgage lien. It furnishes a good reason why the plaintiff's special property in the goods was not of the value it alleged. The admission of proof of the facts which may establish this subrogation in this action tends to secure a just and speedy conclusion of this litigation. In the absence of some insuperable legal obstacle, it ought to be permitted. No such obstacle is perceived in the decisions of the courts or the reason of the case, while its admission is sustainable by the same arguments that induced the Supreme Court to establish the rule that the admission of proof of an estoppel in pais in defense of an action of ejectment was allowable. And our conclusion is that one in actual possession of personal property holding the right to that possession and an interest in the property by subrogation to the rights of a superior lienor may prove, in an action at law in the federal courts, in defense of his possession and interest against an inferior lienor, the facts which establish the subrogation. For the reasons which have now been presented, the facts set forth in the offer of the defendant appear to be relevant, material, and competent upon the main issues in the case, the issue of the right of possession and the issue of the value of the plaintiff's special interest therein, and the defendant should be permitted to prove them.

The judgment below will accordingly be reversed, and the case will be remanded to the court below, with instructions to grant a new trial. It is so ordered.